BLACK DIAMOND GIRL SCOUT COUNCIL, INC., a non-profit West Virginia corporation, Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation, Defendant.

Civ. A. No. 84–2159.

United States District Court, S.D. West Virginia, Charleston Division.

July 18, 1985.

Gerard R. Stowers, Charleston, W.Va., for plaintiff.

Norman K. Fenstermaker, Huntington, W.Va., for defendant.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court upon the motion of the defendant, St. Paul Fire and Marine Insurance Company (hereinafter St. Paul), for joinder of certain parties as plaintiffs pursuant to Rule 19 of the Federal Rules of Civil Procedure, and upon the motion of plaintiff, Black Diamond Girl Scout Council, Inc. (hereinafter Black Diamond), for summary judgment and declaratory relief. Each motion will be dealt with in turn.

This action was removed to the United States District Court for the Southern District of West Virginia from the Circuit Court of Kanawha County, West Virginia, on April 19, 1984. Black Diamond seeks a declaratory judgment that St. Paul is obligated under the terms of its liability insurance contract with Black Diamond to provide legal defense and representation and to provide policy coverage for Black Diamond with respect to a civil action pending in·the Circuit Court of Taylor County, West Virginia. In the Taylor County, action which is styled *Helen M. Jones, Administratrix, et al. v. Black Diamond Girl Scout Council, et al.*, Jones sued Black Diamond and four others on account of the alleged wrongful death of a former Black Diamond employee.

## JOINDER OF PARTIES

St. Paul has moved the court to enter an order joining as additional plaintiffs the parties in the Taylor County action. It is asserted that the parties who are sought to be joined are subject to jurisdiction and that service of process may be made upon them.

Rule 19 of the Federal Rules of Civil Procedure provides in pertinent part:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

St. Paul observes that upon a verdict for the plaintiff in the Taylor County action, the plaintiff may file a direct action against St. Paul upon nonpayment of judgment by Black Diamond. Similarly, St. Paul comments that if judgment is entered against both Black Diamond and any other of the defendants and judgment is paid by any other defendant, then that defendant has a right of contribution against Black Diamond. It is argued that the parties in the Taylor County action are necessary since they have claims which will be affected by declaration of the court in this action; that disposition of the action may impair or impede their ability to protect their interest, and that in their absence St. Paul will be subjected to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Finally, St. Paul claims that in the absence of the parties in the Taylor County action, complete relief cannot be accorded between St. Paul and Black Diamond.

As the commentators have discussed, "[t]here is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a). The decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them." 7 Wright & Miller, Federal Practice and Procedure: Civil § 1604 at 35 (1972 & Pocket Part 1985); *see also*, 3A Moore's Federal Practice ¶ 19.01–1[1] (1985).

Black Diamond's claim for declaratory relief simply seeks to establish St. Paul's duties and obligations under an insurance contract to which only Black Diamond and St. Paul are parties. Thus, under Rule 19 standards, "complete relief

[can] be accorded among those already parties." The subject insurance contract has nothing to do with the rights and obligations of any of the parties to the Taylor County action. St. Paul's arguments are purely hypothetical as the plaintiff in the Taylor County action has no judgment with which to bring any action against St. Paul as Black Diamond's liability insurer, nor do Black Diamond's co-defendants have any present right to proceed against St. Paul. Nor is there any way at this time to determine if plaintiff obtains a judgment against one or more of the co-defendants in the state court action whether all or any part of the liability would be assessed against Black Diamond under West Virginia's comparative fault, comparative contribution rules. Indeed, complete relief can be accorded simply by the adjudication of St. Paul's duties under the policy which requires neither the state court plaintiff or defendants. Furthermore, the potential interests of the parties in the state court action simply do not rise to the level of a protectible interest as required by Rule 19. *See Hoosier Casualty Co. v. Fox*, 102 F.Supp. 214 (N.D.Iowa 1952) (holding that an injured party in an underlying tort action was not a necessary party in an action by an insurer for declaratory judgment of nonliability where the injured person had not obtained judgment against the insured).

There is also no merit to St. Paul's assertions that the plaintiff in the state court action directly, or any of the co-defendants, by subrogation or assignment will subject St. Paul to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations with respect to the insurance contract. The court will rule on two issues. First, it will be determined whether St. Paul has a duty to defend Black Diamond. The second issue is whether St. Paul is obligated to provide coverage under the terms of the policy. Once judgment is entered as to these issues, future relitigation of the issues will be barred under the doctrine of collateral estoppel. *See e.g., Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S.

322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Yarn Industries v. Krupp International, Inc.*, 736 F.2d 125 (4th Cir.1984).

Accordingly, the motion of St. Paul for joinder of additional parties must be denied.

## SUMMARY JUDGMENT

Black Diamond has moved the court pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment declaring that St. Paul has a duty to provide a defense and to provide coverage under the Umbrella Excess Liability Policy entered into between Black Diamond and St. Paul.

The essential facts are not in dispute. On July 27, 1981, Stephanie J. Jones, while an employee of Black Diamond working at Camp Meadowlea and while acting within the scope of her employment, died as the result of electrocution while working about the camp's swimming pool. Affidavit of Anne Ackenhusen. Black Diamond had two separate contracts of insurance in full force and effect on July 27, 1981. One policy was a Comprehensive General Liability Policy with New Hampshire Insurance Group. *Id.* at Exhibit C. The second policy was an Umbrella Excess Liability Policy numbered 562XB8171 with St. Paul. *Id.* at Exhibits A and B.

An action arising out of the electrocution was brought against Black Diamond and others by Helen M. Jones, Administratrix of the Estate of Stephanie J. Jones on July 25, 1983. *Id.* at Exhibit D. On August 18, 1983, New Hampshire Insurance Group informed Black Diamond by letter that upon a review of the policy, liability coverage did not apply because of exclusion "j" of the policy which specifically stated that "[t]his insurance does not apply to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured." *Id.* at Exhibit E. Black Diamond does not contest New Hampshire Insurance Group's denial of coverage.

On August 22, 1983, Black Diamond received a letter from St. Paul denying cover-

age and defense. St. Paul remarked that its policy with Black Diamond would track the primary liability coverage afforded by New Hampshire Insurance Group who was denying coverage and defense. St. Paul additionally asserted as follows:

[The] policy provides no employer's liability coverage and exclusion (a) stipulates as follows: "This policy shall not apply: (a) to any obligation for which the insured or any company as its insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law....

*Id.* at Exhibit G.

St. Paul has since abandoned the argument that its policy tracks the New Hampshire policy and has conceded that the St. Paul policy sets out its own obligations to be determined strictly from the policy itself. The parties have also agreed that any issues of bad faith refusal to defend, as well as claims of waiver or estoppel that Black Diamond might have against St. Paul are not pending in the motion for summary judgment. Thus, what remains to be determined is whether the workmen's compensation exclusion applies so that the St. Paul policy does not provide for defense or indemnity and, as raised in St. Paul's answer and argued in its memorandum, whether the death of Stephanie Jones was either expected or intended rather than accidental or due to negligence and therefore not covered by the definition of occurrence in the St. Paul policy. In analysis, the court will follow the general rule that: "An insurance policy which requires construction must be construed liberally in favor of the insured." *Hensley v. Erie Ins. Co.,* 283 S.E.2d 227 (1981), quoting *Polan v. Travelers Ins. Co.,* 156 W.Va. 250, 192 S.E.2d 481 (1972) (Syllabus Point 3).

## A. WORKMEN'S COMPENSATION EXCLUSION

■ Black Diamond argues that the workmen's compensation exclusion, quoted above and relied upon by St. Paul to deny coverage and defense, is not applicable to the circumstances involving Stephanie Jones. Black Diamond asserts that the cause of action in the Taylor County case is not an obligation for which Black Diamond may be held liable under any workmen's compensation or similar laws.

St. Paul refers to the fact that Stephanie Jones was covered under workers' compensation (Workers' Compensation Act, W.Va. Code §§ 23-1-1 through 23-6-1 (1981 Replacement Vol. & Cum.Supp.1984)) and that fifteen hundred dollars was paid by the West Virginia Workers' Compensation Fund for the death of Stephanie Jones. St. Paul argues that "since benefits were payable to the Estate of Stephanie Jones, and she actually did receive payment from the Workmen's Compensation Fund, exclusion (a) of the St. Paul policy applies and thus the policy does not provide for defense or indemnity under the circumstances of this case." St. Paul's Memorandum at 7.

The cause of action asserted by the Estate of Stephanie Jones in the Taylor County suit is one commonly referred to in West Virginia as a *Mandolidis* claim. In *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978), the West Virginia Supreme Court of Appeals held that under the Workmen's Compensation Act,[1] employers are subject to common-law tort actions for damages or for wrongful death where the employer commits an intentional tort or engages in willful, wanton and reckless misconduct. *Mandolidis,* 246 S.E.2d at 914. As noted in the *Mandolidis* opinion, West Virginia enacted its workers' compensation scheme in 1913 because of public dissatisfaction with the common law tort system whereby as a result of the defenses of contributory negligence, assumption of risk, and the fellow servant rule, workers injured in industrial accidents received compensatory damages in only a very small number of cases. *Mandolidis,* 246 S.E.2d at 910-11. The workers' compensation scheme, as conceived and estab-

---

1. In 1983, the compensation legislation was amended so that references to workers' compensation were substituted for references to workmen's compensation throughout the section.

lished, was essentially a no-fault system in that it provided recovery to employees injured in work-related accidents regardless of fault, *Mandolidis*, 246 S.E.2d at 911. As part of the trade-off for recovery, employers were granted immunity from suit by employees for damages based on work-related injuries. W.Va.Code § 23–2–6 (1981 Replacement Vol. & Cum.Supp.1984). The legislation established an exception to the protection provided by the statutory immunity from suit where injury or death resulted from the deliberate intention of the employer. W.Va.Code § 23–4–2 (1981 Replacement Vol. & Cum.Supp.1984). In *Mandolidis*, the court interpreted the deliberate intent language to mean that an employer loses immunity from common law actions where the "employer's conduct constitutes an intentional tort or wilful, wanton, and reckless misconduct." *Mandolidis*, 246 S.E.2d at 914.

The Taylor County suit brought by the Estate of Stephanie J. Jones alleges in part that the death of Jones was a direct and proximate result of the "willful, wanton and reckless misconduct of the Black Diamond Girl Scout Council." Complaint at § 13. It was further alleged that Black Diamond acted with a "conscious, subjective and deliberately formed intention to electrocute Stephanie J. Jones." Complaint at ¶ 15.

It is plain that whether Stephanie J. Jones was an employee covered under workers' compensation and whether fifteen hundred dollars was paid for funeral expenses is not decisive. The central question is whether the Taylor County action arose outside of the West Virginia workers' compensation scheme, or is an obligation imposed by virtue of the Workers' Compensation Act such that St. Paul may properly deny coverage. West Virginia Code section 23–4–2 provides in pertinent part:

If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under the chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

W.Va.Code § 23–4–2 (1981 Replacement Vol. & Cum.Supp.1984).

The language of West Virginia Code section 23–4–2 providing that an employee shall have a "cause of action against the employer as if this chapter had not been enacted," and the cause of action is for "any excess of damages over the amount received or receivable under this chapter," together with *Mandolidis* and its progeny, removes any immunity to a common law tort action by an employee. The claim of the Estate of Stephanie J. Jones is one for wrongful death which is not barred by the Workers' Compensation Act and which arises outside of the Act. Reliance by St. Paul upon the workmen's compensation exclusion is not well-founded.[2]

Thus, the *Mandolidis* claim of the Estate of Stephanie J. Jones is a common law tort claim not barred by the West Virginia Workers' Compensation Act and which arises outside of and not by virtue of the West Virginia Workers' Compensation Act such that the St. Paul Policy exclusion is not applicable.

## B. OCCURRENCE

St. Paul has also asserted that coverage was denied because of the definition of the term occurrence in the policy with Black Diamond. The policy provides as follows:

---

**2.** *Cf. Federal Rice Drug Co. v. Queen Ins. Co.*, 463 F.2d 626 (3d Cir.1972). (Action involved a virtually identical exclusion. A former employee of Federal Rice committed suicide in the insured's place of business. The death was alleged to be the result of intentional, willful, wanton and/or negligent conduct and the employer was sued. The applicable Pennsylvania workmen's compensation statute applied only to accidents. The death was held not to be the result of an accident, although it arose out of employment. Thus, since the complaint of the decedent's estate alleged an intentional or a negligent tort falling outside the coverage of the Pennsylvania Workmen's Compensation Act, the policy afforded coverage.)

## I. COVERAGE

The Company will indemnify the Insured for all sums which the Insured shall become legally obligated to pay as damages, all as more fully defined by the term "ultimate net loss" on account of: 1. Personal Injuries ... to which this Policy applies caused by an occurrence.

. . . .

## 9. OCCURRENCE

The term "Occurrence" means (1) with respect to subsection (a) of the definition of personal injuries and with respect to property damage, an event, including injurious exposure to conditions, which results during this policy period in such personal injury, or property damage neither expected nor intended from the standpoint of the Insured. . . .

St. Paul essentially argues that given that the Taylor County action is a *Mandolidis*-type claim, the underlying tort is an intentional tort such that it is excluded from coverage by the policy language "neither expected nor intended from the standpoint of the insured." See pages 9 through 12 for the background of *Mandolidis*.

■ In determining the insuror's duty to provide coverage and to defend an action against an insured, the court must look to the allegations of the pleadings in the action against the insured. *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531 (8th Cir.1970). A review of the allegations against Black Diamond in the Taylor County action reveals the following in Count I of the complaint:

(10) The Black Diamond Girl Scout Council knew or should have known the dangers attendant to the use of such defective and dangerous electrical system and equipment and therefore had a subjective realization that bodily injury could occur from its use.

(11) Irrespective of this subjective realization, the Black Diamond Girl Scout Council negligently, carelessly, indifferently, knowingly and willfully failed to provide a safe workplace for Stephanie J. Jones . . . .

. . . .

(13) The death of Stephanie J. Jones was a direct and proximate result of the willful, wanton and reckless misconduct of the Black Diamond Girl Scout Council.

In Count II of the Taylor County action are the following allegations:

(15) The Black Diamond Girl Scout Council acted with a conscious, subjective and deliberately formed intention to electrocute Stephanie J. Jones.

. . . .

(19) ... Black Diamond Girl Scout Council ... exposed Stephanie J. Jones to said unsafe working conditions intentionally; and that as a result of this exposure, Stephanie J. Jones was electrocuted.

Black Diamond argues that *Mandolidis* permits a cause of action for torts which are something less than specifically intended and that because Count I of the complaint in the Taylor County action does not allege specific intent but rather alleges willful, wanton and reckless misconduct, the exclusion does not apply and St. Paul is obligated to defend Black Diamond. Black Diamond contends that the policy exclusion clause is only applicable in cases where a specific intent to injure is alleged. St. Paul's responsive approach is not to argue that something less than specific intent is required under the policy, but rather to argue, upon the authority of *Mandolidis* and its progeny, that the Taylor County action is in fact one that alleges a specific intent to cause injury. Thus, the court is obligated to undertake an analysis of *Mandolidis*.

The opinion of the West Virginia Supreme Court of Appeals in *Mandolidis* indicates that it permits a cause of action for torts which are something less than specifically intended. Significantly, the court held that an employer acts with "deliberate intent to produce an injury or death" and thereby loses his immunity from common law actions brought by employees whenever the employer's conduct constitutes an "intentional tort *or* wilful, wanton and reckless misconduct." *Mandolidis*, 246

S.E.2d at 914 (emphasis added.) In order to remove the immunity bar, the employer's conduct must be "undertaken with a knowledge and an appreciation of the high degree of risk of physical harm to another created thereby." *Mandolidis*, 246 S.E.2d at 914. Evidence of prior deaths or injuries and the knowledge of the existence and contents of federal and state safety laws and regulations is admissible to establish an employer's subjective knowledge of the risk of harm. *Mandolidis*, 246 S.E.2d at 914 n. 10.

In defining deliberate intention within the meaning of the workers' compensation legislation, the court drew heavily upon three earlier opinions. The question of deliberate intention was first addressed in *Collins v. Dravo Contracting Co.*, 114 W.Va. 229, 171 S.E. 757 (1933). In *Collins*, it was recognized that an employer could deliberately intend to cause injury or death by an act of omission and that accordingly a wrongful death action may be brought. The action was remanded for trial on the theory of deliberate intent to injure or kill. It was noted that the omission must be one with a "design" to injure or kill the employee. *Collins*, 114 W.Va. at 234–35, 171 S.E. at 759. The *Mandolidis* opinion noted that the *Collins* court had refused to accept the interpretation of the statute urged by the employer which would have required a specific intent to injure or kill. *Mandolidis*, 246 S.E.2d at 913.

Less than a year after the *Collins* decision, the court attempted to define the deliberate intention requirement. In *Maynard v. Island Creek Coal Co.*, 115 W.Va. 244, 175 S.E. 70 (1934), the court held that an employer could lose his statutory immunity from suit if the reasonable anticipated, natural and probable consequences of the employer's conduct would be death or serious injury to the employer. *Maynard*, 115 W.Va. at 253, 175 S.E. at 72. The *Maynard* court observed:

> Gross negligence is not tantamount to "deliberate intention" to inflict injury. It may be that the carelessness, indifference and negligence of an employer may be so wanton as to warrant a judicial determination that his ulterior intent was to inflict injury. But in the very nature of things, a showing which would warrant such finding would have to be clear and forceful in high degree.

*Maynard*, 115 W.Va. at 253, 175 S.E. at 72. The *Mandolidis* court read the *Maynard* opinion as not concluding that a showing of specific intent to injure or kill was required to avoid the immunity bar. *Mandolidis*, 246 S.E.2d at 912.

The court also reviewed *Allen v. Raleigh-Wyoming Mining Co.*, 117 W.Va. 631, 186 S.E. 612 (1936), wherein the judgment for the plaintiff was set aside in an action arising out of a situation resulting in injuries to the plaintiff while riding at the front of a trip of empty coal cars in defendant's mine when struck by a wooden trapdoor hung across the tracks. The *Allen* court held that an employee may not recover damages for personal injury from an employer protected by workers' compensation laws absent a showing of the employer's specific intent to injure him. *Allen*, 117 W.Va. at 636–37, 186 S.E. at 614. The *Allen* construction of deliberate intent was subsequently adhered to in *Eisenaugle v. Booth*, 159 W.Va. 779, 226 S.E.2d 259, 261 (1976), and *Brewer v. Appalachian Constructors, Inc.*, 135 W.Va. 739, 748–50, 65 S.E.2d 87, 93–94 (1951).

The *Mandolidis* court found that *Allen* was inconsistent with *Maynard* and *Collins* and expressly overruled *Allen*. *Mandolidis*, 246 S.E.2d at 913. The court determined that both *Collins* and *Maynard* had rejected, as a prerequisite for common law recovery, the requirement that the employee prove his employer's specific intent to injure him. *Mandolidis*, 246 S.E. at 912–13.

It is observed that the jurisdictions from which West Virginia modeled its workers' compensation scheme, including the limited employer immunity provision, have held that the provision requires proof of specific intent before immunity is lost. *See, Higley v. Weyerhaeuser Co.*, 13 Wash.App. 269, 534 P.2d 596 (1975); *Caline v. Maede*, 239

Ore. 239, 396 P.2d 694 (1964). *See also, Mandolidis,* 246 S.E.2d at 913. The over-ruled *Allen* opinion relied on cases so interpreting the Washington and Oregon legislation. The *Mandolidis* court noted the Washington and Oregon cases with disapproval. *Mandolidis,* 246 S.E.2d at 913.[3]

It is plain, then, that the *Mandolidis* court eliminated the requirement that in order to avoid the immunity bar, an employee must allege and establish that the employer acted, either by commission or omission, with a specific intent to injure or kill the employee. This conclusion is in keeping with express language defining "deliberate intention" as contained in post-*Mandolidis* workers' compensation legislation enacted in 1983 which distinguishes specific intent injuries from those resulting from wilful, wanton and reckless misconduct. The 1983 amendment to the deliberate intention provision provided as follows:

(2) The immunity from suit provided under this section and under section six-a [§ 23–2–6a], article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention." This requirement may be satisfied only if:

(i) It is proved that such employer or person against whom liability is asserted acted with a *consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee.* This standard requires a showing of an *actual, specific intent and may not be satisfied by allegation or proof of* (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) *willful, wanton or reckless misconduct;* or

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a

---

**3.** It appears that the West Virginia Legislature acquiesced in the *Allen* court's construction of the requirement of specific intent to injure or kill as indicated by subsequent amendment and reenactment of the legislation without altering the deliberate intention provision. D. Flannery, J. Beeson, M. Bradley, R. Goddard, "The Expanding Role of the West Virginia Supreme Court of Appeals in the Review of Workmen's Compensation Appeals," 81 W.Va.L.Rev. 1, 11 (1978). Notably a number of bills failed which would have exposed employers to common law liability upon a showing of willful, wanton or reckless misconduct, or gross negligence or which would have created a presumption of deliberate intent to injure against the employer upon a showing that the employee's injury or death was caused by the employer's violation of a safety statute or regulation. 81 W.Va.L.Rev. at 11–12. Indeed, it has been commented that *Mandolidis* creates an employee's common law cause of action for a constructive intent to injure or kill. 81 W.Va.L.Rev. at 14.

direct and proximate result of such specific unsafe working condition.

W.Va.Code § 23–4–2 (1984 Cum.Supp.) (emphasis added).

The reasoning of *Mandolidis* is such that a "specific intent" to injure or kill is not necessary for an employer to lose immunity and, therefore, be subjected to a common law cause of action. Count one of the Taylor County action alleges that Black Diamond negligently, carelessly, indifferently, knowingly and willfully failed to provide a safe workplace for Stephanie Jones and that her death was the direct and proximate result of Black Diamond's willful, wanton and reckless misconduct. That by no means alleges that the resulting death of Stephanie Jones was an occurrence "expected or intended" by Black Diamond. The term "expected or intended" as used in the St. Paul policy implies specific intent and is not the equivalent of the lesser *Mandolidis* standard of wilful, wanton and reckless misconduct found in one who has a subjective realization and appreciation of the high degree of risk of physical harm created by his conduct, unaccompanied by specific intent.[4]

The conclusion that coverage exists under the policy in the present case is fostered by the general rule that: "An insurance policy which requires construction must be construed liberally in favor of the insured." *Hensley*, 382 S.E.2d at 229, *quoting, Polan v. Travelers Ins. Co.*, 156 W.Va. 250, 192 S.E.2d 481 (1972), and *citing, Broy v. Inland Mutual Ins. Co.*, 160 W.Va. 138, 233 S.E.2d 131 (1977); *Thompson v. State Automobile Ins. Co.*, 122 W.Va. 551, 11 S.E.2d 849 (1940). The general rule is an "acknowledgement that the insurance policy is prepared by the company and therefore, the average policyholder has not opportunity to influence the policy language." *Hensley*, 382 F.2d at 229. Moreover, in order to exclude coverage for

*Mandolidis* actions, an insurance company merely has to exclude bodily injury to any employee of the insured arising out of and in the course of his employment as was done in the New Hampshire Insurance Group policy with Black Diamond.

The Estate of Stephanie J. Jones does not allege specific intent against Black Diamond in count one of the Taylor County action. Thus, based upon the pleadings, the occurrence was covered under the Umbrella Excess Liability Policy between Black Diamond and St. Paul.

## CONCLUSION

It is ORDERED that the motion of Black Diamond Girl Scout Council, Inc., for summary judgment and declaratory relief be, and it hereby is, granted. Accordingly, St. Paul is obligated under the insurance policy to provide a defense of Black Diamond in the civil action pending in the Circuit Court of Taylor County, West Virginia, and is obligated to afford Black Diamond liability coverage for the incident of July 27, 1981, as provided by the terms and provisions of the insurance policy.

Finally, it is noted that in the complaint Black Diamond raised the issue of bad faith refusal to provide legal representation and to afford coverage. This matter was not addressed in the memoranda of law on the summary judgment motion. In an effort to bring this action to a conclusion, it is ORDERED that motions in the nature of summary judgment, together with memoranda of law, affidavits and exhibits in support thereof, shall be filed on or before August 5, 1985; responses, together with memoranda of law, affidavits and exhibits in support thereof, shall be filed on or before August 16, 1985; and replies, if any, shall be filed on or before August 23, 1985.

---

4. *Cf. Hensley v. Erie Ins. Co.*, 283 S.E.2d 227 (W.Va.1981), wherein the distinction between an intentional wrong and one based on "gross, reckless or wanton negligence" in West Virginia is dealt with. The court stated, in an action wherein a plaintiff sued the defendant's insurance company for punitive damages, that such right exists when the insurance company's policy has only excluded damages caused by the insured's *intentional* wrong and the insured was found to have committed an act of gross, reckless or wanton negligence.