553 S.E.2d 257

ERIE INSURANCE PROPERTY AND
CASUALTY COMPANY, Plaintiff
below, Appellee,

v.

STAGE SHOW PIZZA, JTS, INC., a West
Virginia corporation, Defendant
below, Appellee,

John Paul Harvey, Defendant
below, Appellant.

No. 28482.

Supreme Court of Appeals of
West Virginia.

Submitted March 20, 2001.

Decided July 9, 2001.

Jeffrey L. Robinette, Esq., Robinette Law Office, Morgantown, for Appellee Erie Insurance Property and Casualty Company.

Arden J. Curry, Esq., Arden J. Curry, II, Esq., David K. Schwirian, Esq., Pauley, Curry, Sturgeon & Vanderford, Charleston, for Appellant John Paul Harvey.

Kimberly G. Mann, Esq., Lynch, Mann, Smith & Bibb, Beckley, for Appellee Stage Show Pizza, JTS, Inc.

STARCHER, Justice.

In this appeal from the Circuit Court of Raleigh County, we are asked to examine a declaratory judgment finding that there was no liability coverage for an employee injured at work under an "employers' liability" insurance policy purchased by an employer. As set forth below, we reverse the circuit court's declaratory judgment.

## I.

### Facts & Background

On February 6, 1997, appellant John Paul Harvey was employed by the defendant below, Stage Show Pizza, JTS, Inc. ("Stage Show Pizza"),[1] in Raleigh County, West Vir-

---

1. We are unclear as to the proper spelling of Stage Show Pizza. At various times in the rec-

ginia. In the course of his employment, appellant Harvey was involved in an accident where hot grease was spilled on the appellant, causing him serious injuries.

The appellant subsequently sued Stage Show Pizza for common law negligence, alleging it had failed to pay workers' compensation premiums, and had therefore lost any immunity provided by West Virginia's workers' compensation laws. The appellant also alleged that in violation of West Virginia's "deliberate intention" statute, *W.Va.Code*, 23–4–2 [1994], Stage Show Pizza had intentionally exposed the appellant to a specific unsafe working condition which violated both generally accepted industry safety standards and specific provisions of the United States Occupational Safety and Health Administration's regulations.

At the time of the appellant's injuries, Stage Show Pizza was insured under a policy issued by the appellee, Erie Insurance Property and Casualty Company ("Erie"). Erie had sold to Stage Show Pizza a commercial general liability insurance policy that, the parties agree, specifically excluded from coverage lawsuits filed by employees.[2] However, the policy also contained a separate "employers' liability" endorsement entitled "Employers Liability—Stop Gap Coverage" with limits of $1,000,000 per person and per accident. Under the heading "Our Promise," Erie's endorsement provides that:

> We will pay for damages because of bodily injury to your employees for which the law holds you responsible and recovery is permitted by law.

On June 10, 1999, Erie filed the instant declaratory judgment action against Stage Show Pizza and appellant Harvey, seeking a declaration that Erie had no obligation to provide a defense or coverage to Stage Show Pizza for the action filed by the appellant. In support of its action, Erie argued that an exclusion in the employers' liability policy precluded coverage. That exclusion states:

> We do not cover: ...

ord it is called "Stage Show," and at other times, it is referred to as "Stageshow."

**2.** The "Ultraflex Package Policy" issued by Erie excluded coverage for:

> 4. any obligation for which you or any insurer may become liable under any workers' compensation, unemployment compensation, disability benefits law or similar law.

Erie subsequently filed a motion for summary judgment seeking to avoid its obligations under the policy based upon this exclusion.

In an order dated January 31, 2000, the circuit court granted Erie's motion for summary judgment. The circuit court concluded that the appellant's "deliberate intention" cause of action and his negligence action would be "obligation[s] for which" Stage Show Pizza "may become liable under any workers' compensation" law. Erie was therefore released from its obligations under the insurance contract with Stage Show Pizza.

The appellant now appeals the circuit court's order.

## II.

### *Standard of Review*

We review *de novo* the circuit court's declaratory judgment order interpreting Erie's insurance policy. We have previously stated that any circuit court's entry of a declaratory judgment is reviewed *de novo*, since the principal purpose of a declaratory judgment action is to resolve legal questions. Syllabus Point 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995). Of course, when a declaratory judgment proceeding involves the determination of an issue of fact, that issue may be tried and determined by a judge or jury in the same manner as issues of fact are tried and determined in other civil actions. *W.Va.Code*, 55–13–9 [1941]. Any determinations of fact made by the circuit court or jury in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard. *Cox*, 195 W.Va. at 612, 466 S.E.2d at 463.

> [B]odily injury to employees of anyone we protect arising out of their employment by anyone we protect for which anyone we protect may be held liable as an employer or in any other capacity[.]

■ In this case we are asked to review the circuit court's interpretation of an insurance contract. In Syllabus Point 2 of *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999) we stated that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal." "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 483, 509 S.E.2d 1, 7 (1998) (citations omitted).

### III.

### *Discussion*

■ In the instant case we are asked to interpret an insurance policy exclusion contained in an "employers' liability" policy. "[W]e scrutinize more carefully any policy language that has the effect of excluding an insured from coverage." *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. at 222, 517 S.E.2d at 319. As we held in Syllabus Point 5 of *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), "[w]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Where a policy provision will largely nullify the purpose of indemnifying the insured, the application of that provision will be severely restricted. *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. at 222, 517 S.E.2d at 319 (1999).

The appellant argues that the position asserted by Erie regarding its policy language, and subsequently adopted by the circuit court in its January 31, 2000 order, is a "catch twenty-two" position. On the one hand, the appellant contends that Erie promised to Stage Show Pizza that it would "pay for damages because of bodily injury to your employees"—yet on the other hand, Erie excludes from coverage any bodily injuries to employees "in the course of and resulting from their covered employment" with Stage Show Pizza. *See W.Va.Code*, 23–4–1 [1989].[3] The appellant argues that under Erie's policy, Erie is claiming to provide employers with coverage for employee injuries, but is, through an exclusion "buried in its policy," always excluding employee injuries from coverage.

The appellant therefore contends that Erie's insurance policy should be construed to provide coverage for injuries to employees which are compensable through causes of action outside of the workers' compensation system—namely, those injuries caused by employers who have lost their immunity because they failed to pay premiums into the workers' compensation system, and those injuries caused by employers who lose their immunity pursuant to the "deliberate intention" provisions of *W.Va.Code*, 23–4–2.

■ In many states, insurance companies offer businesses three types of insurance coverage: commercial general liability coverage; workers' compensation coverage; and "stop gap" employers' liability coverage. A commercial general liability policy protects a business against numerous kinds of liability claims, but it is generally accepted that the standard policy does not provide coverage for any claim brought by an employee against his or her employer arising out of the employment.

On the opposite end of the spectrum is coverage specifically for employee claims against an employer which are compensable under a state's workers' compensation laws. In many states, coverage for workers' compensation claims is provided by private insurance companies; in West Virginia, coverage is primarily provided through the West Vir-

---

**3.** The statute establishing the coverage for workers' compensation benefits, *W.Va.Code*, 23–4–1, states, in pertinent part:

Subject to the provisions and limitations elsewhere in this chapter set forth, the commissioner shall disburse the workers' compensation fund to the employees of employers subject to this chapter, which employees have received personal injuries in the course of and resulting from their covered employment or to the dependents, if any, of such employees in case death has ensued, according to the provisions hereinafter made[.]

ginia Workers' Compensation Fund, a government-controlled insurance system. *See* *W.Va.Code*, 23–1–1, *et seq.*[4] Workers' compensation coverage is designed to release both an employer and its employees from common-law rules of liability and damage, protect an employer from expensive and unpredictable litigation, and provide compensation for injuries to employees without the burdensome requirements of proving common-law negligence. *Jones v. Laird Foundation, Inc.*, 156 W.Va. 479, 489, 195 S.E.2d 821, 827 (1973) (Sprouse, J., concurring).

■ Between these two types of protection lies a "gap" in coverage. In this gap are claims made against a business by injured employees whose claims are not generally compensable under the workers' compensation system. An "employers' liability" policy therefore exists to "fill the gaps" between workers' compensation coverage and an employers' general liability policy. "In the modern era, employers' liability insurance is designed to protect the insurer from tort liability for injuries to employees who do not come under the exclusive remedy provisions of workers' compensation." 16 *Couch on Insurance* § 225:157 (3d ed.2000).

> [E]mployers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a "gap-filler," providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law. Generally, these two kinds of coverage are mutually exclusive. Most employers' liability policies limit coverage to liability for which the insured is held liable *as an employer.*

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 226 Cal.Rptr. 558, 565, 41 Cal.3d 903, 916, 718 P.2d 920, 927 (1986) (citations omitted). *See also, La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal.4th 27, 36 Cal.Rptr.2d 100, 884 P.2d 1048 (1994).

■ We can therefore conclude that employers' liability insurance applies to actions brought by an employee against an employer, when the employer and the employee are not entitled to the benefits and protections under any workers' compensation law, or when, even though covered by a workers' compensation law, the employee has a right to bring an action for common law damages against the employer. *See, e.g.,* 1 *Appleman on Insurance* § 1.17 (2d Ed.1996).

In the instant case, Erie argues that the appellant's causes of action against Stage Show Pizza arise under, not despite, the provisions of the West Virginia Workers' Compensation Act. Accordingly, Erie argues that the exclusion in its employers' liability policy—excluding coverage for "any obligation" for which Stage Show Pizza "may become liable under any worker's compensation" law—precludes Stage Show Pizza from relying on the policy for coverage.

The central question we must address is whether the appellant's causes of action arose outside of the West Virginia workers' compensation system, or whether they are obligations imposed by the Workers' Compensation Act such that Erie may properly deny coverage. We must therefore first determine what type of obligations are encompassed under a workers' compensation system.

To begin, the term "workers' compensation" is a "broad label for those laws providing compensation for loss resulting from the injury, disablement, or death of a worker through industrial accident, casualty or disease, which possess the common characteristic of providing such compensation regardless of fault and in accordance with a definite schedule based upon loss or impairment of the worker's wage-earning power." 1 *Couch on Insurance* § 1:36 (3d Ed.1997).

Federal courts are occasionally asked to determine if a lawsuit arises "under the workers' compensation law" of a state in order to ascertain if the court can exercise diversity jurisdiction. In *Arthur v. E.I. DuPont de Nemours & Co.*, 58 F.3d 121 (4th Cir.1995), a federal court of appeals consid-

---

4. Certain types of employers may, however, apply for permission to self-insure their workers' compensation risk. *See W.Va.Code*, 23–2–9 [1995].

ered whether a plaintiff's deliberate intention cause of action, filed in state court under *W.Va.Code*, 23–4–2, was a "civil action ... arising under the workmen's compensation laws" such that it could not be removed to federal court. The court examined the history of workers' compensation laws, and concluded that

> ... the typical state act included the following features: (1) negligence and fault of the employer and employee were immaterial to recover, (2) common law suits against the employer were barred, (3) medical expenses were capped at a percentage of the employee's wage, (4) an administrative agency ran the system with relaxed rules of procedure to facilitate prompt compensation, and (5) state court review of agency decisions occurred on a deferential basis.

58 F.3d at 125. The court went on to state:

> These authorities lead us to conclude that the ordinary (shorthand) meaning of "workmen's compensation laws" ... was this: a statutorily created insurance system that allows employees to receive fixed benefits, without regard to fault, for work-related injuries.

*Id.* The court held, for purposes of federal diversity jurisdiction, that *W.Va.Code*, 23–4–2 was not a "workers' compensation law"—and therefore, that the action could be prosecuted by a federal court.

We believe that the court's analysis, while originally directed to the interpretation of a federal jurisdictional statute, is an acceptable definition of what is an "obligation" placed on an employer under a workers' compensation law for purposes of insurance coverage.

■ We therefore hold that an insurance policy provision excluding coverage for "an obligation of an employer under any workers' compensation law" means that coverage will not be available for an obligation that is imposed under a workers' compensation act that allows an employee to receive fixed ben-

efits, without regard to the fault of any party, for a work-related injury.

Applying this standard, we must now determine whether the appellant's causes of action are obligations for which Stage Show Pizza may become liable under any workers' compensation law. The first cause of action brought by the appellant is a negligence cause of action, where the appellant alleges that Stage Show Pizza owed the appellant a particular duty and breached that duty, proximately causing his injuries. "From the earliest days of law school, prospective attorneys are taught that the three elements of every tort action are the existence of a legal duty, the breach of that duty, and damage as a proximate result." *Sewell v. Gregory*, 179 W.Va. 585, 587, 371 S.E.2d 82, 84 (1988).

Employers that subscribe and pay premiums into the workers' compensation fund are normally immune from negligence actions such as that asserted by the appellant. *W.Va.Code*, 23–2–6 [1991][5] states, in pertinent part:

> Any employer subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter ... shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments and shall have complied fully with all other provisions of this chapter.

The key to maintaining this immunity is that the employer must comply with various regulations, and must continue to make regular premium payments into the fund.

■ If an employer fails to pay premiums or otherwise comply with certain workers' compensation regulations, under *W.Va. Code*, 23–2–6 [1991] the employer can lose its statutory immunity.[6] As an additional incen-

---

5. "This statute is also known as the 'exclusivity' provision, as it makes workers' compensation benefits the exclusive remedy for personal injuries sustained by an employee injured in the course of and resulting from his or her covered employment." *State ex rel. Frazier v. Hrko*, 203

W.Va. 652, 659 n. 11, 510 S.E.2d 486, 493 n. 11 (1998).

6. While an employer that fails to subscribe or regularly pay premiums to the Workers' Compensation Fund can lose its immunity, the em-

tive to encourage compliance with the Workers' Compensation Act, *W.Va.Code*, 23–2–8 [1991] holds that an employer in default of its obligations under the Act may not only be subjected to a suit for damages resulting from the employer's negligence, but may also be prohibited from exercising certain common-law defenses. This section states, in pertinent part:

All employers required by this chapter to subscribe to and pay premiums into the workers' compensation fund, . . . and who do not subscribe to and pay premiums into the workers' compensation fund as required by this chapter, . . . or having so subscribed and elected, shall be in default in the payment of same . . . shall be liable to their employees . . . for all damages suffered by reason of personal injuries sustained in the course of employment caused by the wrongful act, neglect or default of the employer . . . and in any action by any such employee or personal representative thereof, such defendant shall not avail himself of the following common-law defenses: The defense of the fellow-servant rule; the defense of the assumption of risk; or the defense of contributory negligence; and further shall not avail himself of any defense that the negligence in question was that of someone whose duties are prescribed by statute. . . .

*W.Va.Code*, 23–2–8 specifically reserves to the plaintiff a common-law negligence cause of action. However, we have repeatedly held

that, while the defendant-employer may be stripped of its common-law defenses under *W.Va.Code*, 23–2–8, the plaintiff-employee still bears the burden of proving his or her injuries were the result of the employer's negligence. For example, in *Zinn v. Cabot*, 88 W.Va. 118, 121–22, 106 S.E. 427, 428 (1921) we said:

It appears that the defendant did not avail himself of the benefits of the Workmen's Compensation Act, and is, therefore, deprived of certain defenses of which he could have taken advantage prior to the passage of that act. However, even since the passage of that act, one who does not take advantage of it is not liable in damages for every injury sustained by his employés. The basis of such an action is negligence, and unless some negligence is traced to the employer there is no cause of action. This negligence may be some defect in the working place, or may be some improper method of doing the work by some of the injured employé's fellow servants, but unless there is some failure upon the part of the employer to do something which he should do for the employé's safety, or the commission of some act by him or his servants which results in the injury, there can be no recovery.

The record indicates that Stage Show Pizza was in default of its obligations to the workers' compensation fund for failure to pay premiums on the date the appellant was injured.[7] Accordingly, it appears that Stage

---

ployee may still recover workers' compensation benefits. To be entitled to benefits from the Workers' Compensation Fund, a claimant need only show he or she has sustained a personal injury in the course of and resulting from his or her employment for a West Virginia employer. A claimant is entitled to recover benefits from the Fund regardless of the employer's status with the Fund. *See W.Va.Code*, 23–2–5(g) [1995].

**7.** The record suggests that Stage Show Pizza fell behind on its workers' compensation premiums in 1996. It apparently paid a few dollars a month, and at the time of the plaintiff's accident on February 6, 1997, Stage Show Pizza was *delinquent* on its workers' compensation account. However, on April 10, 1998, the Workers' Compensation Division issued a "Notice of Default and Termination of Coverage" to Stage Show Pizza, stating that the business was *in default* on its account.

*W.Va.Code*, 23–2–5(d) [1995] specifies that if an employer is delinquent in its duties to the workers' compensation fund, and the employer fails to resolve that delinquency, then the Workers' Compensation Division may choose to place the employer "in default." The statute states that "[t]he default employer's liability [under *W.Va.Code*, 23–2–6 and 23–2–8] shall be retroactive to midnight of the last day of the month following the end of the quarter for which the delinquency occurs." Accordingly, as to Stage Show Pizza, the Workers' Compensation Division declared that its account was "in default, beginning at midnight of 02/01/96. Your default is a result of your failure to cure the delinquency. . . ."

We have plainly held that when an employer has been declared to be in default of its obligations by the Workers' Compensation Division, that declaration is binding upon trial courts. We stated, in Syllabus Point 2 of *State ex rel. Frazier*

Show Pizza lost its immunity under the exclusive remedy provision, *W.Va.Code*, 23–2–6; was subject to a suit for common-law damages; and under *W.Va.Code*, 23–2–8, could not assert the common-law defenses of comparative negligence, assumption of the risk, and the fellow-servant doctrine.

▇▇▇▇ Simply put, the appellant is seeking to recover common-law damages through a common-law negligence action. We do not believe that such a negligence cause of action, merely because it is permitted as a result of Stage Show Pizza's defaulting on its obligations to the workers' compensation fund, is a cause of action arising under West Virginia's Workers' Compensation Act. A negligence cause of action against an employer by an employee injured in the course of and as a result of his employment, that is not barred by the immunity provisions of *W.Va. Code*, 23–2–6 because of the employer's de-

fault on its workers' compensation obligations, and against which the employer is prevented from asserting certain common-law defenses by *W.Va.Code*, 23–2–8, is not an obligation of an employer under a workers' compensation law for purposes of interpreting an insurance policy.[8] We therefore believe that the circuit court erred in finding there was no insurance coverage for this cause of action.

▇▇▇▇ The second cause of action brought by the appellant alleges that Stage Show Pizza can be subjected to liability for violating provisions of our "deliberate intention" statute, *W.Va.Code*, 23–4–2. In a deliberate intention action, if an employee is able to establish that the employer acted with conscious, subjective deliberation and intentionally exposed the employee to a specific unsafe working condition,[9] then the employer

---

*v. Hrko*, 203 W.Va. 652, 510 S.E.2d 486 (1998), that:

> Under *W.Va.Code*, 23–2–5(d) [1986], in the absence of a final ruling by the Workers' Compensation Commissioner, a trial court may find an employer in default under the Workers' Compensation Act. However, if the Commissioner has made a final ruling that an employer is in default, then the Commissioner's ruling is binding upon a trial court. The Commissioner's ruling may not be collaterally attacked in a subsequent proceeding considering the same issue, and the employer's proper remedy is to seek review of the ruling through the appellate process established by *W.Va.Code*, 23–2–17 [1990].

In the instant case, the circuit court indicated in a footnote to its order that:

> All indications, from deposition transcripts supplied to this court, are that Stageshow Pizza remained in good standing with the Workers' Compensation Fund, at least during the time of the accident. Although premium payments were apparently not always timely paid, Stageshow Pizza worked out a payment schedule directly with the Fund to stay in good standing as a subscribing employer.

In light of the clear language of *W.Va.Code*, 23–2–5(d), from our reading of the record it would appear that Stage Show Pizza was, as a matter of law, *not* in good standing with the Fund at the time of the accident. *See also*, *W.Va.Code*, 23–2–5(h)(1) [1995] ("The provisions of this section shall not deprive any individual of any cause of action which has accrued as a result of an injury or death which occurred during any period of delinquency not resolved in accordance with the provisions of this article, or subsequent failure to comply with the terms of the repayment agreement.")

**8.** Our decision is not, in any way, meant to condone an employer's failure to pay premiums into the Workers' Compensation Fund, or otherwise comply with workers' compensation regulations.

However, we believe that significant public policy concerns are implicated by an insurance company's provision of coverage for an employer's failure to pay workers' compensation premiums. An employer could, conceivably, read our decision as sanctioning the purchase of an employers' liability policy as a less expensive alternative to paying premiums into the Workers' Compensation Fund. While the employer would face substantial sanctions for such conduct—including paying past due premiums plus interest and penalties, *W.Va.Code*, 23–2–5(f)(1); a civil suit by the Workers' Compensation Division, and seizure of business property, *W.Va.Code*, 23–2–5a(a) and (c) [1995]; and criminal penalties for both the business and its owners, *W.Va.Code*, 61–3–24e [1999]—an employer with a view towards a short term existence might believe it would be expeditious to forego complying with our workers' compensation laws and would instead purchase an employers' liability policy.

In such situations, an insurance company could obviously contend, and this Court might well agree, that it would be against public policy for the insurance company to support and insure the employer's conduct. However, these public policy concerns do not appear to be implicated in the instant case, and have not been raised by the parties.

**9.** *W.Va.Code*, 23–4–2(c)(2) sets forth two different ways that an employee may prove that an employer acted with subjective deliberation and in-

loses its workers' compensation immunity and may be subjected to a suit for damages as if the Workers' Compensation Act "had not been enacted." *W.Va.Code,* 23–4–2(b) states (with emphasis added):

> If injury or death results to any employee from the deliberate intention of his or her employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee has the privilege to take under this chapter, and *has a cause of action against the employer, as if this chapter had not been enacted,* for any excess of damages over the amount received or receivable under this chapter.

By enacting the deliberate intention statute, in *W.Va.Code,* 23–4–2(c) the Legislature specifically stated that it "intended to create a legislative standard for loss of that immunity" established in *W.Va.Code,* 23–2–6. To accomplish this goal, the Legislature set forth "more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct," standards of conduct used in the statute to determine if an employer has acted with deliberate intention. *W.Va.Code,* 23–4–2(c). By creating a specific standard under the statute, the Legislature sought to

tent, thereby causing the employer to lose its statutory immunity. *W.Va.Code,* 23–4–2(c)(2) states, in part:

> The immunity from suit provided under [*W.Va.Code,* 23–4–6] ... may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:
>
> (i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or
>
> (ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:
>
> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

"promote prompt judicial resolution of the question of whether a suit ... is or is not prohibited by the immunity" created in *W.Va.Code,* 23–2–6. *Id.*

Erie directs our attention to *Bell v. Vecellio & Grogan, Inc.,* 197 W.Va. 138, 475 S.E.2d 138 (1996) as support for its argument that a deliberate intention action is an obligation imposed by a workers' compensation statute. In *Bell,* we were asked to examine a conflicts of law question where an employee of a West Virginia employer alleged that he had been deliberately and intentionally injured by his employer in Maryland. Our examination of the deliberate intention statute in *Bell* was integral to determining whether the employee's rights would be adjudicated under West Virginia or Maryland law. Our interpretation of the deliberate intention statute in the *Bell* case centered upon a conflicts of law question, and not its impact upon insurance coverage for deliberate intention claims against employers.

In *Bell,* we ruled that a deliberate intention cause of action is a right held by each employee subject to the West Virginia Workers' Compensation Act. We concluded that the Legislature's enactment of *W.Va.Code,*

> (B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;
>
> (C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and
>
> (E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

23–4–2 "represents the wholesale abandonment of the common law tort concept of a deliberate intention cause of action by an employee against an employer, to be replaced by a statutory direct cause of action by an employee against an employer expressed within the workers' compensation system." Syllabus Point 2, *Bell.* We subsequently held that the employee, who was subject to West Virginia's workers' compensation laws, could pursue his action under West Virginia law.

Erie argues that under *Bell,* this Court conclusively ruled that a deliberate intention cause of action is a purely direct statutory cause of action expressed within the workers' compensation system—and therefore argues that any liability imposed against a policyholder as a result of a deliberate intention lawsuit is liability arising entirely under a workers' compensation law.

The appellant, however, argues that an employer subjected to a deliberate intent action under *Bell* does not become subject to a statutory sanction, but instead becomes liable for common law damages over and beyond any workers' compensation benefits received by an employee, "as if [the Workers' Compensation Act] had not been enacted[.]" In other words, while the deliberate intention statute specifies the evidence necessary to extinguish an employer's immunity under the Workers' Compensation Act, the statute only exposes an employer to an obligation under the common law, namely, damages for any injuries proximately caused by the employer's conduct. As a deliberate intent cause of action results in damages which are not "workers' compensation benefits," the appellant argues that the Erie policy should be

construed to find coverage for his deliberate intent cause of action. We agree.

After carefully reading the Erie policy, we cannot conclude that it excludes coverage for a deliberate intent cause of action.[10] The purpose of Erie's "Employers' Liability—Stop Gap" policy is plain on its face: to pay Stage Show Pizza for damages "because of bodily injury to your employees for which the law holds you responsible and recovery is permitted by law." Coverage for employees was clearly *excluded* from Erie's the commercial general liability policy sold to Stage Show Pizza; we believe it was just as clearly *included* in the employers' liability endorsement attached to that general policy.

 We therefore hold that a finding that an employer is liable pursuant to the deliberate intent provisions of *W.Va.Code,* 23–4–2 does not impose upon the employer a statutory obligation to pay fixed benefits, without regard to the fault of any party, for work-related injuries, and is therefore not an obligation of an employer under a workers' compensation law for purposes of insurance coverage. We therefore believe that the circuit court erred in finding there was no insurance coverage for this cause of action as well.

### IV.

#### *Conclusion*

After a careful examination of the policy provisions involved in the instant case, we conclude that the circuit court erred in granting a declaratory judgment to Erie. The causes of action filed by the appellant would not create obligations under any workers' compensation law such that the appellant

---

10. It appears possible to exclude coverage for these types of claims. For example, in *Black Diamond Girl Scout Council v. St. Paul Fire & Marine Ins. Co.,* 621 F.Supp. 96 (S.D.W.Va. 1985), an employee of a Girl Scout camp was electrocuted while working on a swimming pool. The employee's estate filed suit against the employer under the deliberate intention provisions of a now superseded version of *W.Va.Code,* 23–4–2. *See Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978). The employer's insurance company denied coverage. The court considered a policy exclusion in the employer's policy precluding coverage for "any obli-

gation for which the insured ... may be held liable under any workmen's compensation ... law[.]"

The court ruled that a deliberate intention cause of action arose outside of the West Virginia workers' compensation scheme. However, the court indicated that the insurance company could easily have used specific policy language to exclude coverage for the claim, stating that "an insurance company merely has to exclude bodily injury to any employee of the insured arising out of and in the course of his employment[.]" 621 F.Supp. at 104.

would receive fixed benefits, without regard to the fault of any party, for his allegedly work-related injuries. Our reading of the record suggests that Stage Show Pizza had a reasonable expectation that lawsuits filed by employees would be covered under Erie's "Employers Liability—Stop Gap Coverage" endorsement.

We therefore reverse the circuit court's January 31, 2000 order, and remand this case for further proceedings.

Reversed and Remanded.

ALBRIGHT, Justice, concurring in part and dissenting in part.

I concur fully in the judgment of this Court that the "Employers' Liability–Stop Gap" provisions of the commercial general liability insurance policy at issue in this action provided coverage for the deliberate intent action brought against Stage Show Pizza, JTS, Inc. by the appellant John Paul Harvey. Unless that stop-gap coverage is construed to provide coverage in the case of a deliberate intent action for which the workers' compensation provides employers no immunity, those policy provisions must be seen as essentially illusory and meaningless. Such a construction would be absurd. Moreover, the history of the development of *W.Va. Code §* 23–4–2(c)(2) and the emergence and marketing of such "stop-gap" insurance coverage in this state track each other rather nicely. This tends to confirm that the conclusion reached by the majority in regard to coverage for the deliberate intent action in consonant with the intent of the parties to the insurance contract, as expressed by the language in the "stop gap" portion of the insurance policy at issue, even though the parties have failed to update the language since our decision in *Bell v. Vecellio & Grogan, Inc.,* 197 W.Va. 138, 475 S.E.2d 138 (1996), afforded the appellee insurance company an occasion to argue that such "stop-gap" coverage no longer extended to the purpose for which it was designed and marketed.

However, I dissent strongly from the conclusion of the majority that the parties intended to afford coverage of the common-law negligence action in this case, which is viable solely because the employer here defaulted in the payment of workers' compensation premiums. The majority holding implies that the employer and the insurer contemplated that the employer would default in the payment of those premiums. The majority holding finds that the employee's right to sue the employer in an action for negligence at common law, free and clear of the several defenses of which the employer is deprived because of having defaulted in the payment of workers' compensation premiums, did not arise "under any workers' compensation . . . law."

In its effort to find a deep pocket from which the Plaintiff below might recover a slam-dunk verdict for negligence in a trial in which the employer (and its insurer) is deprived of several common law defenses, the majority has twisted the agreement of the parties into something it is not and blithely dismissed the underlying public policy issues raised by the Court's opinion by reciting blandly, if not blindly, that "these public policy concerns do not appear to be implicated in the instant case, and have not been raised by the parties." Simply put, it is wrong to shift from the employer here to its insurer the burden placed by the law on the employer for its failure to timely and fully pay workers' compensation payments. That is not the purpose for which this employer purchased this insurance. That public policy concern is most clearly implicated here and was certainly raised by the parties as an integral part of the action here appealed.

MAYNARD, Justice, concurring in part and dissenting in part.

I concur with the majority's determination that the circuit court erred in finding there was no insurance coverage for the appellant's common law negligence cause of action. As noted by the majority, the record indicates that Stage Show Pizza was in default on its obligations to the workers' compensation fund for failure to pay premiums on the date the appellant was injured. As a result, Stage Show Pizza lost its immunity under W.Va. Code § 23–2–6 (1991) and was subject to a suit for common law damages. Accordingly, Erie has an obligation under its policy to

provide coverage to Stage Show Pizza for the appellant's common law action.

I dissent, however, to the majority's holding that Erie must provide coverage for the appellant's deliberate intention cause of action. Erie's policy clearly provides that it does not cover "any obligation for which you or any insurer may become liable under any workers' compensation ... law." As acknowledged by the majority, this Court ruled in *Bell v. Vecellio & Grogan, Inc.,* 197 W.Va. 138, 475 S.E.2d 138 (1996) that a deliberate intention cause of action is a right held by each employee subject to the West Virginia Workers' Compensation Act. We made clear in *Bell* that a statutory deliberate intention cause of action supersedes a common law cause of action and "is woven within the workers' compensation fabric in this State[.]" *Bell,* 197 W.Va. at 139, 475 S.E.2d at 139. Because a deliberate intention cause of action exists under a workers' compensation law, the Erie policy, by its plain terms, excludes coverage for such a cause of action.

For the reasons stated above, I concur in part and dissent in part.