613 S.E.2d 896

**Paul LUIKART, as Administrator for the Estate of the Decedent, Paul Travis Luikart, Plaintiff Below, Appellant,**

v.

**VALLEY BROOK CONCRETE & SUPPLY, INC., Defendant Below, Appellant.**

and

Motorists Mutual Insurance Company, a Mutual Insurance Company, Plaintiff Below, Appellee,

v.

Valley Brook Concrete and Supply, Inc., and Paul Luikart, as Administrator for the Estate of Decedent, Paul Travis Luikart, Defendants Below, Appellants.

No. 31867.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2005.

Decided May 10, 2005.

Thomas R. Goodwin, Richard D. Owen, Johnny M. Knisely II, Raymond S. Franks II, Goodwin & Goodwin, L.L.P., Charleston, for the Appellants, Paul Luikart, as Administrator for the Estate of the Decedent, Paul Travis Luikart, and as assignee of the rights of Valley Brook Concrete and Supply, Inc.

Diana Everett, Daniel A. Ruley, Jr., Pullin, Fowler & Flanagan, P.L.L.C., Beckley, for the Appellee, Motorists Mutual Insurance Company.

PER CURIAM:

Paul Luikart (hereinafter referred to as "Mr. Luikart"), as administrator for the estate of his deceased son, Paul Travis Luikart (hereinafter referred to as "Travis"), and as assignee of the claims of Valley Brook Concrete and Supply, Inc. (hereinafter referred to as "Valley Brook"), appeals from an order entered January 12, 2004,[1] by the Circuit Court of Putnam County. By that order, the circuit court found that no coverage existed under the exclusionary language of the commercial general liability insurance policy issued to Valley Brook by Motorists Mutual Insurance Company (hereinafter referred to as "Motorists"). On appeal, Mr. Luikart argues that the exclusions are void because they were not disclosed and that Motorists had a duty to offer "stop gap" insurance. Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we affirm the decision of the circuit court.

1. The Circuit Court of Putnam County filed two orders: (1) an "Order Granting Summary Judgment" and (2) an order filed contemporaneously therewith titled "Findings of Fact and Conclusions of Law." The latter order contains two different date stamps, one for January 12, 2004, and one for January 13, 2004. Because the first order contains only the date stamp of January 12, 2004, we will assume that date is the correct entry date for both orders.

2. The record indicates that the argument was advanced during the early stages of the case that an unidentified vehicle might have been involved in causing or contributing to the crash. This fact is relevant insofar as it could trigger the application of other available insurance coverage. However, this argument was abandoned as the

## I.

## FACTUAL AND PROCEDURAL HISTORY

The case before us follows the circuit court's grant of summary judgment in a declaratory judgment action based on exclusions in an insurance policy. To understand the present posture of the case and the parties' relationships, it is necessary to have a familiarity with the facts of the wrongful death action that preceded the filing of the declaratory judgment action.

### A. Wrongful Death Action

Valley Brook is a seller of concrete and related items. An essential part of its business is the delivery of its products to its customers. Travis Luikart was employed by Valley Brook as a truck driver. On August 28, 1999, Travis was killed in a single vehicle accident[2] while delivering concrete within the scope of his employment for Valley Brook. Mr. Luikart, as the administrator of Travis' estate, filed a wrongful death action against Valley Brook in the Circuit Court of Putnam County, wherein he claimed a deliberate intent violation under the West Virginia Workers' Compensation Act. See W. Va. Code § 23–4–2(c)(2) (1913) (Repl.Vol. 1994).[3] In this suit, Mr. Luikart alleged that the truck's suitability for operation had dangerously deteriorated,[4] and that Valley Brook had deliberately and intentionally exposed Travis to an unsafe working condition. At the time of the accident, Valley Brook had a commercial general liability policy through Motorists,[5] and tendered defense of the

accident investigation continued and the facts were more fully developed.

3. The relevant portion of the statute has been redesignated as W. Va.Code 23–4–2(d) (2003), without substantive change.

4. Mr. Luikart claimed that the truck's brakes had not been properly maintained. Subsequent to the accident, the truck was inspected, and it was discovered that one rear brake was totally inoperable and that the other was critically deficient. The investigation also revealed that both of these conditions existed at the time of the fatal accident.

5. We note that the agent who sold this policy and handled the claim for Motorists was formerly the

wrongful death action to its insurer. This wrongful death action was eventually consolidated with a subsequently-filed declaratory judgment action.

### B. Declaratory Judgment Action

Upon receipt of the possible claim under the policy, Motorists sent a letter dated October 4, 1999, to Brent Clark, President of Valley Brook. The letter acknowledged receipt of the wrongful death action and stated an intention to defend based on a reservation of rights. In June 2000, Motorists filed a declaratory judgment action seeking a determination that it had no duty to defend against the claim made by Mr. Luikart or to indemnify Valley Brook. Motorists based its position on the policy's exclusions for (1) expected or intended injury; (2) workers' compensation laws; and (3) employer's liability. Specifically, the policy provides:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 0001 (07–98)**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered . . . .

**SECTION I-COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

. . . .

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . . .

d. **Workers['] Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury[.]

### C. Consolidation of the Actions

Thereafter, the circuit court consolidated the wrongful death action with the declaratory judgment action. The matter was mediated, and Motorists did not offer any settlement monies. However, Valley Brook and Mr. Luikart entered into a Settlement Agreement. The terms of the agreement were such that Valley Brook confessed judgment in the amount of three million dollars; Valley Brook assigned its rights under the insurance policy to Mr. Luikart; and Mr. Luikart agreed not to execute the judgment against Valley Brook.

The circuit court approved the Settlement Agreement of the wrongful death action and dismissed the same from the docket, leaving only the declaratory judgment action for further resolution. Mr. Luikart, on behalf of the estate and as assignee of Valley Brook's rights, then filed amended counterclaims in the declaratory judgment action against Motorists seeking payment for the Settlement Agreement reached with Valley Brook. Motorists moved to dismiss the counterclaims, and further moved for summary judgment on the coverage issue. The circuit court granted summary judgment to Motorists on the coverage issue and dismissed Mr. Luikart's claims. By order entered January 12, 2004, the circuit court found in favor of Motorists

president of Valley Brook and is the current president's father.

on the basis that the insurance policy afforded no coverage under the clear and unambiguous exclusions set forth in the policy. From this adverse ruling, Mr. Luikart appeals to this Court.

## II.

## STANDARD OF REVIEW

■ This case is before this Court on appeal from the circuit court's order granting summary judgment in favor of Motorists. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Thus, in undertaking our *de novo* review, we apply the same standard for granting summary judgment that is applied by the circuit court:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter,* 192 W.Va. 189, 451 S.E.2d 755. Moreover,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter, id.* We are also cognizant that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter, id.* Mindful of these applicable standards, we now consider the substantive issues raised herein.

6. We recognize that additional arguments were raised by the parties. However, the manner in which we resolve this case disposes of our need to address those other issues.

## III.

## DISCUSSION

On appeal to this Court, Mr. Luikart assigns error to the circuit court's determination that the policy language acts to exclude coverage for the incident involving Travis' death. Mr. Luikart concedes that the policy language is clear and unambiguous, but, nonetheless, sets forth two basic arguments: [6] (1) the exclusions were never disclosed to Valley Brook and are, therefore, unenforceable; and (2) Motorists had a duty to offer "stop gap" coverage [7] to Valley Brook.

Motorists responds that the exclusionary language was placed in boldface print in a conspicuous place in the insurance policy, and further, Valley Brook's representative testified that he read the terms and conditions of coverage. Therefore, Motorists urges that because the exclusionary language is clear and unambiguous as agreed to by the parties, and because the exclusions were conspicuous within the document, they operate as written and exclude coverage for Travis' fatal accident. Motorists also argues that there is no duty to offer stop gap coverage. We will now focus our discussion on the disclosure issue, then turn our attention to the duty to provide stop gap coverage.

### A. Disclosure of Exclusions

■ West Virginia jurisprudence imposes a duty to make exclusionary language conspicuous, plain, and clear, and further imposes a duty to bring such exclusions to the attention of the insured. In this regard, we have held:

> An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.

7. The concept of stop gap coverage is discussed *infra* at Section III, B.

Syl. pt. 10, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), *abrogated on other grounds by Potesta v. United States Fid. & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998). Moreover, "[a]n insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." Syl. pt. 7, *McMahon*, 177 W.Va. 734, 356 S.E.2d 488.

 Both parties agree that the exclusionary language of the policy is clear and unambiguous and that, if applied, it prevents coverage in this situation. " 'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syl. pt. 2, *West Virginia Fire & Cas. Co. v. Stanley*, 216 W.Va. 40, 602 S.E.2d 483 (2004). This Court's review must necessarily turn to the issues of conspicuousness and disclosure. If the language was both conspicuous and disclosed, then the plain language of the exclusions must be applied.

In our review of the insurance policy, we must first consider the conspicuity of the exclusionary language. The term "conspicuous" is defined as "clearly visible or obvious .... [w]hether a printed clause is conspicuous as a matter of law ... depends on the size and style of the typeface." *Black's Law Dictionary* 329 (8th ed. 2004). In the present case, the exclusionary language was set apart from the other language by an emboldened subheading entitled "Exclusions." Therefore, the only conclusion that can be reached by the use of the boldface language is that it was, indeed, conspicuous.

Mr. Luikart maintains that the boldface print was meaningless because the exclusions were buried within a voluminous document that consisted of the entire insurance policy. We reject this assertion. Our examination of the entire document reveals that a portion entitled "Schedule of Forms and Endorsements" was included with the policy and served as a table of contents. The relevant

section regarding commercial general liability coverage was set apart and separately numbered within the document. The table of contents also delineated the separate sections within the general liability policy, including the coverage contained therein and the declarations page. Consequently, while the document as a whole was large, there was sufficient guidance to locate the exclusions.

Mr. Luikart next argues that the exclusions were not disclosed to Valley Brook; therefore, Mr. Luikart states that Motorists violated the requirement that, in order for exclusionary language to apply, an insurer "must bring such provisions to the attention of the insured." Syl. pt. 10, in part, *McMahon*, 177 W.Va. 734, 356 S.E.2d 488. We have also stated that "the insurer may avoid liability by proving that *the insured read and understood the language in question,* or that the insured indicated his understanding through words or conduct." *McMahon*, 177 W.Va. at 742, 356 S.E.2d at 496 (emphasis added) (internal citations omitted); *see also Mitchell v. Broadnax*, 208 W.Va. 36, 49 n. 24, 537 S.E.2d 882, 895 n. 24 (2000) ("Methods by which insurers may effectively communicate an exclusion to an insured to secure his/her awareness thereof may include, but are not necessarily limited to, reference to the exclusion and corresponding premium adjustment on the policy's declarations page or procurement of the insured's signature on a separate waiver signifying that *he/she has read and understood the coverage limitation.*") (emphasis added) (internal citations omitted), *superseded by statute as recognized in* Syl. pt. 7, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002).

In light of the evidence presented to this Court, we are of the opinion that the exclusionary language was properly disclosed to Valley Brook. Brent Clark, the President of Valley Brook, and the representative who contracted for the insurance coverage,[8] testified that he read the terms and conditions of the coverage. During his deposition, Mr. Clark testified:

---

8. As previously noted, Motorists' representative was Mr. Clark's father. *See infra* note 5.

Q: Okay. Now, prior to the filing of the lawsuit on behalf of the Luikart estate, had you ever had occasion to read the policy of insurance which the corporation had acquired from Motorists Insurance? Just actually sat down and read through the policy?

A: Ma'am, it's two inches think, and I get lost after about seven or eight pages. What I focus in on are two things, the amounts of my coverages and bodily injury, collision, comprehension, make sure I have liability coverage. Then I go to my vehicle listing [9] to make sure my vehicles are completely covered in all three of those areas.

And when it gets into the terms of when Workers' Comp and when liability takes over, okay, it's out of my ball court.

Q: I understand your frustration with the length of the policy, Mr. Clark, but do I understand from your answer that, from the standpoint of reading the terms and conditions of the insurance, you personally have not done that?

A: *The terms and conditions of the coverage, I have.* The complete coverage, cover to cover, I have not read it cover to cover.

(emphasis supplied) (footnote added). From this testimony, it is apparent that Mr. Clark read and understood "[t]he terms and conditions of the coverage" provided by Valley Brook's policy with Motorists. Moreover, the policy's coverage section .clearly stated

that it was subject to various exclusions. The portion of the insurance policy titled "Commercial General Liability Coverage Form," which contains the relevant exclusionary language, cautions in its first sentence that "[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." Accordingly, we conclude that Motorists sufficiently disclosed the exclusions to Valley Brook.

### B. Stop Gap Coverage

 Mr. Luikart next argues that Motorists had a duty to offer "stop gap" coverage to Valley Brook. A stop gap employers' liability policy exists to cover "claims made against a business by injured employees whose claims are not generally compensable under the workers' compensation system." *See Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza, JTS, Inc.,* 210 W.Va. 63, 68, 553 S.E.2d 257, 262 (2001). The policy "exists to 'fill the gaps' between workers' compensation coverage and an employers' general liability policy." *Id.* In short, Mr. Luikart argues that Motorists had a duty to offer such coverage, and that had such coverage been in place, the death of Travis Luikart would have been afforded coverage under such policy.[10]

 In analyzing Mr. Luikart's argument, we first note that an insurer has no statutory duty to offer stop gap insurance coverage.[11] In spite of the lack of a statuto-

9. The "Business Auto Coverage Form," included as part of the insurance policy, also contains the same exclusions as does the commercial general liability section of the policy.

10. We recognize that the trial court, in its January 12, 2004, order, found that even if the stop gap provision had been in effect, Motorists still would not be obligated to pay under the endorsement because there was never an actual trial and final judgment and Motorists did not consent to the Settlement Agreement between Mr. Luikart and Valley Brook. However, because we ultimately conclude that there was no duty on the part of Motorists to offer stop gap coverage, we decline to comment on this conclusion made by the trial court.

11. We have recognized that insurers are statutorily required to offer certain coverage benefits in the context of automobile insurance. *See Bias v. Nationwide Mut. Ins. Co.,* 179 W.Va. 125, 365

S.E.2d 789 (1987) (holding that if insurer fails to comply with statutory duty to offer optional underinsured and uninsured motorist coverage in commercially reasonable manner, such coverage is included in policy by operation of law), *superceded by statute as recognized in Ammons v. Transportation Ins. Co.,* 219 F.Supp.2d 885 (S.D.Ohio) (recognizing promulgation of W. Va. Code § 33–6–31d (1993), outlining manner in which insurer must offer optional uninsured motorist coverage). However, it has been recognized that, even in the face of such a mandate, "[n]o insurer is required to ... notify any person of the availability of such optional coverages authorized by this section *except as required by this section." See Burrows v. Nationwide Mut. Ins. Co.,* 215 W.Va. 668, 674, 600 S.E.2d 565, 571 (2004) (discussing W. Va.Code § 33 6–31d(e) and reiterating that the duty to offe ͻptional coverage is limited to those specific circumstances contained within the statutory language).

ry duty to offer such stop gap coverage, Mr. Luikart argues, in essence, that it was reasonable to expect coverage for the type of accident experienced by Travis. We have previously held:

> "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syllabus Point 8, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).

Syl. pt. 9, *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 509 S.E.2d 1 (1998). The application of the doctrine of reasonable expectations has resulted in a relaxation of our earlier-stated rule that a party to a contract has a duty to read the instrument. *See McMahon*, 177 W.Va. at 741 n. 6, 356 S.E.2d at 495 n. 6 (rejecting portion of *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), which is based on the general rule that a party to a contract has a duty to read the contract).

 Generally, we have noted that, "[i]n West Virginia, the doctrine of reasonable expectations is limited to those instances . . . in which the policy language is ambiguous." *McMahon*, 177 W.Va. at 742, 356 S.E.2d at 496 (internal citations omitted). "[T]he doctrine of reasonable expectations is essentially a rule of construction, and unambiguous contracts do not require construction by the courts." *McMahon*, 177 W.Va. at 742 n. 7, 356 S.E.2d at 496 n. 7 (internal citations omitted).

 Despite this general rule, we note that while the doctrine of reasonable expectations originally was considered a canon of construction and thus applied to only ambiguous contracts, a line of cases has extended the scope of the doctrine beyond circumstances involving ambiguous policy language. In limited circumstances, the doctrine of reasonable expectations may be applied even in cases where the policy language is clear and unambiguous. *See American Equity Ins. Co. v. Lignetics, Inc.*, 284 F.Supp.2d 399 (N.D.W.Va.2003) (applying West Virginia law and recognizing that the doctrine of reasonable expectations may be applied in cases of clear and unambiguous language). In *Romano v. New England Mutual Life Insurance Co.*, 178 W.Va. 523, 362 S.E.2d 334 (1987), this Court refused to apply a policy exclusion when promotional materials provided to the insured did not alert him to the exclusion and, on the contrary, led him to a reasonable belief that he was covered under the policy. *Romano*, 178 W.Va. at 529, 362 S.E.2d at 340. This Court has also found that the doctrine of reasonable expectations may apply in a situation where an insurer attempts to deny coverage based on an exclusion that was not communicated to the insured, or where there is a misconception about the insurance purchased. *See Keller v. First Nat'l Bank*, 184 W.Va. 681, 403 S.E.2d 424 (1991) (explaining that, after a bank's offer to insure was accepted with consideration, the bank had created an expectation of credit life insurance in the insured even though the bank's offer had been extended by mistake, and the bank could not deny coverage). In a subsequent opinion discussing *Keller*, this Court stated that "procedures which foster a misconception about the insurance to be purchased may be considered with regard to the doctrine of reasonable expectation of insurance." *Costello v. Costello*, 195 W.Va. 349, 352–53, 465 S.E.2d 620, 623–24 (1995) (per curiam).

In the present case, both parties agree that the exclusionary language is clear and unambiguous on its face. While we recognize that the doctrine of reasonable expectations can apply in such a situation, we conclude that it does not apply under the facts of this case. The exclusions were communicated to the insured. Significantly, the testimony of the President of Valley Brook illustrates that the terms and conditions of coverage, including the exclusions, were not only disclosed, but were read by the insured. Therefore, the doctrine of reasonable expectations does not apply, and Motorists was under no duty to provide stop gap coverage.

## IV.

### CONCLUSION

Accordingly, this Court concludes that the exclusionary language of the insurance policy was conspicuous due to its emboldened type letter, and further that it was disclosed to the insured by virtue of a table of contents and by the testimony of the insured's representative that he read the terms and conditions of coverage. Moreover, the exclusions were communicated to the insured and there was no misconception about the insurance purchased. Further, the doctrine of reasonable expectations does not apply and Motorists had no duty to offer stop gap coverage. For the foregoing reasons, we affirm the January 12, 2004, order of the Circuit Court of Putnam County.

Affirmed.