**CANAL INSURANCE COMPANY,**
**Plaintiff,**

v.

**Woodrow SHERMAN d/b/a Sherman Trucking, Janet L. Taylor, Individually and as the Administratrix of the Estate of Albert L. Taylor, Jr., 3rd Generation Trucking, and Alexander Leiva, Defendants.**

**Civil Action No. 05–263.**

United States District Court,
E.D. Pennsylvania.

May 5, 2006.

Chester F. Darlington, Marshall, Dennehey, Warner, Coleman & Goggin, Phila, PA, for Plaintiff.

Michael J. Troiani, Stein & Troiani, Bala Cynwyd, PA, Mark Jenkinson, Burke, Schultz, Harman & Jenkinson, Martinsburg, WV, R. Erick Chizmar, Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C., John J. McGrath, Mckissock & Hoffman PC, Philadelphia, PA, for Defendant.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the Court are the parties' cross motions for summary judgment in this declaratory judgment action. Plaintiff Canal Insurance Company ("Canal") moves for summary judgment on the issue of whether the underlying wrongful death action is covered by the basic automobile liability insurance policy Canal provided to defendant Woodrow Sherman d/b/a Sherman Trucking Company ("Sherman"). Defendant Sherman filed a cross motion for summary judgment seeking an order that Canal has a duty to defend and indemnify Sherman in the underlying wrongful death action.[1] Defendant Janet Taylor also filed a cross motion for summary judgment seeking an order that the claims and damages she asserts in the underlying wrongful death action against Sherman are covered by the insurance policy. Moreover, Taylor seeks a declaratory judgment that the underinsured motorist coverage applies in the underlying action if defendant Third Generation Trucking and its employee defendant Alexander Leiva's[2] liability exceeds the policy limits of their insurance coverage. Third Generation Trucking opposes Canal's motion for summary judgment with arguments similar to those of Sherman and Taylor, but has not filed a cross motion for summary judgment. Alexander Leiva has not responded to or participated in this cause of action.

## I. BACKGROUND

Canal issued a "Basic Automobile Liability Insurance" policy, valid from June 21, 2002 to June 21, 2003, to Woodrow Sherman d/b/a Sherman Trucking Company. Canal brought this diversity action seeking a declaratory judgment that the underlying wrongful death action is not covered by the insurance policy.

Albert Taylor was an employee of Sherman, when on October 23, 2002 he was involved in an accident in Lower Saucon Township, Northhampton, Pennsylvania en route to a delivery in Hudson County, New Jersey. Defendant Alexander Leiva, a truck driver employed by defendant Third Generation Trucking, had parked his tractor trailer on the shoulder of Interstate 78 in Northhampton County, Pennsylvania. Leiva allegedly failed to display any warning devices that his tractor trailer was stopped on the highway. Albert Taylor's truck collided with Leiva's parked tractor trailer. The collision was fatal and Albert Taylor was pronounced dead at the scene of the accident.

Janet Taylor, individually as Albert Taylor's wife and as the administratrix of his estate, filed the underlying wrongful death action in the Superior Court of New Jersey, Hudson County, Docket Number L–526094, on January 27, 2004. In that suit, she names as defendants Woodrow Sherman d/b/a Sherman Trucking Company, Third Generation Trucking and Alexander Leiva, in addition to ABC Corporation and XYZ Corporation (fictitious names).

## II. DISCUSSION

### A. Standard for Summary Judgment.

A court may grant summary judgment only when "the pleadings, depositions, an-

---

1. Canal is currently defending Sherman in the underlying action under a reservation of rights to challenge the applicability of coverage.

2. An alias summons was served for defendant Leiva, who has failed to answer plaintiff's complaint or appear to defend in this declaratory judgment action. Third Generation Trucking does not purport to defend on behalf of Leiva.

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" only if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" only when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. *Id.* In determining whether there exist genuine issues of material fact, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 305–06 (3d Cir.2001) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

■ Cross-motions are merely claims by each side that it alone is entitled to summary judgment. They do not constitute an agreement that if one is denied the other is necessarily granted, or that the losing party waives judicial consideration and determination of whether genuine issues of material fact exist. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968). The summary judgment burden shifting paradigm is well-rehearsed. First, the moving party must demonstrate the absence of a genuine issue of material fact. If so, the burden shifts to the non-moving party to point, through deposition

testimony or affidavits, to the existence of such an issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In doing so, the non-moving party cannot rely on unsupported assertions, speculation or conclusory allegations to avoid the entry of summary judgment, *see id.* at 324, 106 S.Ct. 2548, but rather "must go beyond the pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. U.P.S.,* 214 F.3d 402, 407 (3d Cir.2000). Where cross motions are pending, the paradigm applies separately to each of the cross motions.

*B. Choice of Law.*

This diversity action invokes venue in Pennsylvania as the place of the accident giving rise to this lawsuit. None of the parties is a citizen of the state of Pennsylvania.[3] The insurance contract at issue was entered into by Canal and Sherman in the state of West Virginia, where Sherman Trucking is incorporated and maintains its principal place of business. All parties agree that West Virginia law applies to the instant dispute and employ West Virginia law in support of and in opposition to the cross motions for summary judgment. Therefore, the Court will apply West Virginia law to the instant dispute.

*C. The Language of the Contract.*

Canal issued a basic automobile liability insurance policy, number 379560, to Sherman for his trucking business. That policy contained certain exclusions and endorse-

---

3. The citizenship of the parties is alleged to be as follows:
 1. Plaintiff Canal Insurance Company is incorporated in South Carolina with its principal place of business in South Carolina.
 2. Defendant Woodrow Sherman is a citizen of West Virginia and is doing business as Sherman Trucking, a business located in West Virginia.

3. Defendant Janet L. Taylor (individually and as the Administratrix of the Estate of Albert L. Taylor, Jr.) is a citizen of West Virginia.
4. Defendant Third Generation Trucking is incorporated in New Jersey with its principal place of business in New Jersey.
5. Defendant Alexander Leiva is a citizen of New York.

ments. At issue are the following portions of the basic automobile liability insurance contract.

### 1. *Basic Coverage.*

The following describes the basic coverage afforded under the policy.

### SECTION A—BASIC AUTOMOBILE LIABILITY INSURANCE

### I. COVERAGE A—BODILY INJURY LIABILITY—COVERAGE B—PROPERTY DAMAGE LIABILITY:

The company will pay on behalf of the **insured** all of the sums which the **insured** shall become legally obligated to pay as damages because of **Bodily injury or property damage** to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or of a **temporary substitute automobile,** and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damages,** even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### 2. *The Exclusions.*

i. Employee exclusion

**Exclusions:** This insurance does not apply:

. . . . .

(c) to **bodily injury** to any employee of the **insured** arising out of and in the course of his employment by the **insured** or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the **insured** unless benefits therefore are in whole or in part either payable or required to be provided under any workmen's compensation law;

ii. Worker's compensation exclusion

**Exclusions:** This insurance does not apply:

. . . . .

(b) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law.

### 3. *The MCS–90 Endorsement.*

### ENDORSEMENT FOR MOTOR CARR POLICIES OF INSURANCE FOR PUBLIC LIABILITY UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

. . . . .

The insurance policy to which the endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public

liability resulting from negligence in the operation, maintenance or use of motor vehicle subject to the financial responsibility requirements of Section 20 and 30 of the Motor Carrier Action of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. **Such insurance as is afforded for public liability does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo.**

### D. Canal's Motion for Summary Judgment.

Canal asserts three arguments in support of its motion for summary judgment: (1) the employee exclusion bars coverage; (2) the worker's compensation exclusion bars coverage because Taylor admits that she has received worker's compensation benefits; and (3) the MCS–90 endorsement does not apply to the underlying wrongful death action.

### 1. Employee Exclusion.

First, Canal asserts that the employee exclusion prevents coverage in the underlying wrongful death action against Sherman and others. The insurance policy's employee exclusion, according to Canal, bars coverage for "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured." Pl.'s Mem. of L. at 9. In the underlying action, Taylor states in her complaint that Albert Taylor was acting as an employee and within the scope of his employment at the time of the accident. That admission, Canal argues, invokes the employee exclusion and prevents coverage for the underlying action.

In response, Sherman asserts that the employee exclusion does not apply because Canal failed to display the exclusion conspicuously in the policy and failed to explain the exclusion. Taylor argues that the language of the employee exclusion is ambiguous, in addition to the arguments set forth by Sherman.

### 2. Worker's Compensation Exclusion.

Second, Canal asserts that the worker's compensation exclusion in the policy bars coverage in the underlying wrongful death action. That exclusion, according to Canal, applies to "matters where workers [sic] compensation is received or owed." Pl.'s Mem. of L. at 14. Again, Canal highlights Taylor's admission in her complaint in the underlying action that Albert Taylor was acting within the scope of his employment at the time of the accident. Further, Canal points to deposition testimony from Taylor that she received worker's compensation benefits for Albert Taylor's death. Finally, Canal attaches a letter from the state of West Virginia Bureau of Employment Programs, which administers worker's compensation benefits, approving Taylor's request for benefits. Therefore, Canal argues, the plain language of the worker's compensation exclusion prevents coverage in the underlying wrongful death action because Taylor has received benefits.

Sherman again asserts that the exclusion does not apply because Canal failed to display the exclusion conspicuously in the policy and failed to explain the exclusion. Taylor argues that the worker's compensation exclusion does not apply in this case because Sherman had defaulted on his payments to the fund at the time of the accident.

### 3. The MCS–90 Endorsement.

■ Third, Canal argues that the federally mandated MCS–90 endorsement,[4] by its own language, does not apply to the underlying case. The purpose of the endorsement is to provide liability coverage to third parties. The endorsement states: "Such insurance as is afforded for public liability does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo." 49 C.F.R. 387.7 (2006). That language, Canal argues, prevents the endorsement from applying to the underlying wrongful death action by an employee against his employer for injuries sustained during the course of employment.

### E. Defendants' Cross Motions for Summary Judgment.

Sherman and Taylor respond in their cross motions for summary judgment that, under West Virginia law, the doctrine of reasonable expectations prevents the operation of the exclusions in Canal's insurance policy. Moreover, Sherman seeks a judgment that the underlying action creates a duty to defend under the insurance contract. Taylor also seeks a judgement that the underinsured motorist coverage in the Canal policy applies to the underlying action in the event any liability on the part of Third Generation Trucking and Leiva exceeds their insurance policy limits. Nevertheless, Sherman and Taylor primarily argue that they are entitled to summary judgment because the exclusions in the insurance policy were not conspicuously displayed or explained to Sherman and the doctrine of reasonable expectations prevents operation of the exclusions.

## III. ANALYSIS

Read together, at bottom, the parties raise the following issues in their cross motions for summary judgment: (1) what duties impress upon an insurer before the insurer may rely on an exclusion to limit the scope or extent of coverage; (2) what is the applicability of the doctrine of reasonable expectations to exclusions from coverage; and (3) when does the duty to defend attach.[5]

### A. Exclusions from Coverage.

Insurance coverage exists where "the insurer agrees to indemnify the insured against losses contemplated within the terms of the policy, but arising from events which are unknown and contingent at the time the policy is issued." 16 Richard A. Lord, Williston on Contracts § 49:2 (4th ed.2005). "An exception or exclusion in a policy of insurance is a limitation of

---

4. The MCS–90 endorsement, pursuant to federal transportation regulations, is required for all insurance policies of truckers engaged in interstate commerce. See 49 C.F.R. 387.7 (2006). The application of transportation regulations is governed by federal law. See T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc., 242 F.3d 667 (5th Cir.2001); accord Carolina Cas. Ins. Co. v. Ins. Co. of N. Am., 595 F.2d 128 (3d Cir.1979) (employing federal law to determine applicability of ICC regulations to a lessor-lessee dispute).

5. Also before the Court was the extent of the underinsured motorist coverage under the Canal policy. Taylor's cross motion for summary judgment originally sought a declaration that the underinsured motorist coverage in the Canal policy applied in the underlying wrongful death action. The parties later stipulated that underinsured motorist coverage was not before the Court in this declaratory judgment action, but rather was reserved for the underlying wrongful death action venued in the Superior Court of New Jersey. See Doc. No. 50. Therefore, the Court will not address the applicability of underinsured motorist coverage.

liability or a carving out of certain types of loss to which the coverage or protection of the policy does not apply." 17 Lord, *supra* § 49:111.

 The burden is on the insurance company seeking to apply the exclusion to prove the "facts necessary to the operation of that exclusion." *Luikart v. Valley Brook Concrete & Supply, Inc.*, 216 W.Va. 748, 613 S.E.2d 896, 901 (2005) (citing *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488, syll. pt. 7 (W.Va.1987), *abrogated on other grounds by, Potesta v. U.S. Fid. & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998)). West Virginia law imposes upon insurers seeking to apply a policy exclusion to avoid liability the dual duties (1) to make the exclusion conspicuous to the insured and (2) to explain the exclusion to the insured. *Nat'l Mut. Ins.*, 356 S.E.2d at 496; *see also Luikart*, 613 S.E.2d at 900 (describing "a duty to make exclusionary language conspicuous, plain, and clear, *and* ... a duty to bring such exclusions to the attention of the insured" (emphasis added)). Furthermore, these duties apply even where the language is clear and unambiguous. *Id.* (addressing issues of conspicuousness and disclosure where both parties agreed the exclusionary language was clear and unambiguous). The duty to make exclusions conspicuous and the duty to explain are threshold issues that, if not satisfied, prevent the application of the exclusion. Therefore, the Court must determine whether the exclusionary language upon which Canal relies was conspicuously displayed and whether it was explained to the insured, regardless of the how clear and unambiguous the language of the exclusion.

### 1. Conspicuousness.

 "Whether a printed clause is conspicuous as a matter of law ... depends on the size and style of the typeface." *Id.* at 901 (quoting Black's Law Dictionary 329 (8th ed.2004)). The court may consider the size of the typeface, whether it appears in boldface print and the ease of use of the insurance policy's table of contents to locate the exclusions. *Id.*

The West Virginia Supreme Court addressed a similar issue in *Luikart,* which involved a declaratory judgment action for a wrongful death suit brought by an employee truck driver against an employer.[6] There, the parties agreed that the language of the contract was clear, and the only issue before the court was the conspicuousness of the exclusion and any disclosure by the insurer. *Id.* at 753, 613 S.E.2d 896. The court held that the size and style of the typeface were such that the exclusion was conspicuous. The language was in boldface print, the relevant section was set apart and numbered and the table of contents easily guided the insured to the exclusions. *Id.* Moreover, the court found that the insurer properly disclosed the exclusions because the insured testified that he read the terms and conditions of the coverage and checked his vehicle listing. *Id.* at 754, 613 S.E.2d 896 (the insured did not read the policy "cover to cover," but reviewed the terms and conditions of coverage). That review of the policy demonstrated the insured was aware of the language in the policy, including exclusions. Therefore, the court upheld the exclusions and denied coverage.

 The exclusions at issue in the Canal policy are conspicuously displayed. The exclusions are contained in the first section

---

6. The wrongful death action was consolidated with the declaratory judgment action. The wrongful death action was settled and only the declaratory judgment action remained. *Luikart,* 613 S.E.2d at 899.

and on the first page of the policy. The word "exclusions" appears in boldface type and each exclusion is set apart and numbered, which comports with the conspicuousness of the policy language at issue in *Luikart*. Therefore, the exclusions in the Canal policy are sufficiently conspicuous under West Virginia law and Canal has satisfied its duty to make exclusionary language conspicuous. *Id.* at 753, 613 S.E.2d 896.

### 2. Duty to Explain.

■■■■ Moreover, and more important to the case at bar, an insurer not only must demonstrate that the exclusions were made conspicuous in the contract, but also "must bring such provisions to the attention of the insured." *Nat'l Mut. Ins.*, 356 S.E.2d at 496. If the insurer did not expressly bring the exclusion to the insured's attention, the insurer may still "avoid liability by proving [ (1) ] that the insured read and understood the language in question, or [ (2) ] that the insured indicated his understanding through words or conduct." *Id.* The burden is on the insurer to demonstrate that it satisfied the duty to explain exclusions to the insured. To satisfy such a burden, the West Virginia Supreme Court instructs that:

> Methods by which insurers may effectively communicate an exclusion to an insured to secure his/her awareness thereof may include, but are not necessarily limited to, reference to the exclusion and corresponding premium adjustment on the policy's declarations page or procurement of the insured's signature on a separate waiver signifying that he/she has read and understood the coverage limitation.

*Luikart*, 216 W.Va. at 753, 613 S.E.2d 896 (quoting *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882, 895 n. 24 (2000), *superceded by statute in Findley v. State Farm*

*Mut. Auto. Inc. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002)).

■■■ In this case, Canal does not argue that it expressly brought to Sherman's attention the exclusions relevant to this claim, but rather that Sherman indicated his understanding of the exclusions through words or conduct. As the moving party, Canal has the burden of showing the absence of a genuine issue of material fact that Sherman indicated his understanding of the exclusions through words or conduct. Canal points to one declaration stating that Sherman has maintained a policy with Canal for seven years, filed nine claims and maintained two other policies for basic physical damage and cargo damage. *See* Decl. of Elizabeth Robertson, Esq. The declaration does not identify the types of claims filed and even whether any of the exclusions were at issue. The number of times Sherman has renewed his policy or made claims for coverage does not put to rest the issue of whether Sherman understood the exclusions through words or conduct.

Unlike the insured in *Luikart* who acknowledged that he read the key aspects of the policy, Canal has offered no evidence as to Sherman's understanding of the exclusions. These naked assertions, speculation and conclusory allegations are insufficient to show the absence of a genuine issue of material fact that Sherman demonstrated his understanding of the exclusions through words or conduct. Therefore, Canal's motion for summary judgment that the exclusions bar coverage will be denied.

■■■ On the other hand, as to Sherman's motion for summary judgment, Sherman has the burden of showing there is no genuine issue of material fact that Canal failed to explain the exclusions in the policy. In support of his motion, Sherman has offered an affidavit indicating that

Canal did not explain the any of the terms and conditions of the policy.[7] *See* Aff. of Woodrow Sherman. As discussed above, even if Canal did not explain the exclusions to Sherman, Canal can still avoid liability for failure to explain, under West Virginia law, by showing that Sherman (1) "read and understood the language in question" or (2) "indicated his understanding through words or conduct." *Nat'l Mut. Ins.*, 356 S.E.2d at 496. To that end, Canal did not offer any deposition testimony indicating that Sherman understood, through words or conduct, the exclusionary language in the policy and the only declaration offered states merely that Sherman has been a policy holder for seven years and has filed nine claims.[8] That Sherman held a policy containing the exclusions for a number of years and has filed claims under the policy, which were not related to the exclusions relevant here, does not put at issue whether Sherman indicated an understanding of the policy through words or conduct. Therefore, Sherman has shown there is no genuine issue of material fact that the policy was not explained to him and Canal has failed to raise such an issue. Under West Virginia law, failure to explain the exclusion to the insured prevents the application of that exclusion. Therefore, Sherman is entitled to judgment as a matter of law.

As to Taylor's motion, again, Taylor must demonstrate the absence of a genuine issue of material fact. In support of her motion for summary judgment, Taylor highlights Canal's failure to offer any evidence to support its position that Sherman understood the policy through words or conduct.[9] *See* Taylor's Statement of Facts at ¶ 20. Therefore, Taylor also is entitled to judgment as a matter of law as to her claim that the exclusions do not apply because they were not explained to Sherman.

### B. Doctrine of Reasonable Expectations.

 The parties debate the applicability of the doctrine of reasonable expectations. Under West Virginia law, the doctrine of reasonable expectations in the area of insurance contracts states that "the objectively reasonable expectations of ap-

---

7. Sherman explains in his affidavit that "the only information that was given by the agent and/or representative was information concerning rates and vehicles covered." *See* Aff. of Woodrow Sherman.

8. Canal argues that Sherman waived any argument that the exclusions were not explained when he failed to raise it as an affirmative defense or to disclose it during discovery. At the heart of Canal's argument in opposition to Sherman's cross motion for summary judgment is that Canal is unduly prejudiced by Sherman's raising this argument on summary judgment and not as an affirmative defense or during the course of discovery. Canal argues it will be highly prejudiced if the Court entertains Sherman's allegations on this issue, as Canal has not had an opportunity to obtain discovery on whether the exclusions were explained to Sherman. The duties to make exclusions conspicuous and to explain exclusions to the insured, however, are not affirmative defens-

es, but rather are threshold issues as to whether an insurer may employ the exclusions to avoid liability. *See Luikart*, 613 S.E.2d at 900. It informs of the duty the insurer must satisfy to prevail on a theory of exclusion from coverage that would otherwise be available under the policy. In other words, it is Canal's duty to show that it brought the exclusions to Sherman's attention, that Sherman read and understood the exclusions, or that Sherman demonstrated his understanding of the exclusions through words or conduct. Therefore, Sherman need not have asserted the duty to explain as an affirmative defense under Federal Rule of Civil Procedure 8(c) and there was no unfair surprise to Canal.

9. Taylor also alleged that the employee exclusion was ambiguous. The Court need not address Taylor's ambiguity argument because the threshold issue of the duty to explain exclusions was not satisfied.

plicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Nat'l Mut. Ins.*, 356 S.E.2d at 489.

Given that Sherman and Taylor are entitled to summary judgment based upon Canal's failure to satisfy the duty to explain exclusions to the insured, the Court need not determine whether the doctrine of reasonable expectations is applicable to these facts.[10]

## C. Duty to Defend.

Sherman's cross motion for summary judgment seeks a determination that Canal has a duty to defend and indemnify Sherman in the underlying wrongful death action. The duty to indemnify, however, is separate from the duty to defend. *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581, 584 (1988). The duty to defend is an obligation to defend the insured against claims that are reasonably susceptible of an interpretation of coverage under the insurance

---

**10.** The parties also debate whether the affirmative duties to make exclusions conspicuous and to disclose exclusions to the insured are separate from the doctrine of reasonable expectations. It appears as though the duties are separate and distinct from the doctrine of reasonable expectations when the issue is a declaratory judgment action based upon the applicability of exclusions in the policy. As noted above, the duties of conspicuousness and disclosure apply whenever an insurer seeks to avoid liability through an exclusion. Whereas, the doctrine of reasonable expectations applies when an insurer creates an expectation of coverage but an exclusion in the policy actually prevents that coverage.

In *Luikart*, the court appeared to distinguish the duties to disclose and explain exclusions from the doctrine of reasonable expectations. There, the insured made two arguments. One, the exclusions were unenforceable because they were never explained; and two, the insurer had a duty under the doctrine of reasonable expectations to offer "stop gap" coverage, which fills the gaps between worker's compensation and an employer's general liability policy. *Luikart*, 216 W.Va. at 752, 754, 613 S.E.2d 896. The West Virginia Supreme Court addressed each issue separately, first determining that the exclusions applied because they were conspicuously displayed and the insurer demonstrated, through deposition testimony, that the insured read and understood the contract. Second, the court applied the doctrine of reasonable expectations to determine that the insurer was under no duty to offer "stop gap" coverage.

The court in *Luikart* stated that the doctrine of reasonable expectations applies "where the

insurer attempts to deny coverage based on an exclusion that was not communicated to the insured, *or* where there is a misconception about the insurance purchased." *Id.* at 755, 613 S.E.2d 896 (emphasis added) (addressing the duty to disclose and the doctrine of reasonable expectations in the disjunctive, using the word "or"). Although there is an exclusion that was not communicated to the insured, the doctrine of reasonable expectations does not apply because Sherman has not alleged an ambiguity in the language of the contract. Typically, the doctrine of reasonable expectations only applies when the language of the contract is ambiguous. *Nat'l Mut. Ins.*, 356 S.E.2d at 496. Any ambiguous contractual language is "to be construed strictly against the insurance company and in favor of the insured." *Id.* at 494 (quoting *W. Va. Pub. Employees Ins. Bd. v. Blue Cross Hosp. Serv., Inc.*, 174 W.Va. 605, 328 S.E.2d 356, 359 n. 3 (1985)). However, "[i]n limited circumstances, the doctrine of reasonable expectations may be applied even in cases where the policy language is clear and unambiguous." *Luikart*, 613 S.E.2d at 903 (citing *Am. Equity Ins. Co. v. Lignetics, Inc.*, 284 F.Supp.2d 399 (N.D.W.Va.2003)). For example, where promotional materials provided to the insured did not alert him to the exclusion and created a belief that coverage existed under the policy, the court applied the doctrine of reasonable expectations despite clear and unambiguous language in the contract. *Id.* at 903 (citing *Romano v. New. England Mut. Life Ins. Co.*, 178 W.Va. 523, 362 S.E.2d 334, 340 (1987)). Such circumstances are not present here, therefore the doctrine of reasonable expectations does not apply.

policy. In contrast, the duty to indemnify is an obligation to provide coverage, i.e. to pay a third party for damages caused by risks that fit within the coverage provided by the insurance policy. *Id.* "Furthermore, it is generally recognized that the duty to defend the insured may be broader than the obligation to pay under a particular policy. This ordinarily arises by virtue of language in the ordinary liability policy that obligates the insurer to defend even though the suit is groundless, false, or fraudulent." *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156, 160 (1986). The duty to defend is broader than the duty to indemnify, the latter of which cannot arise until liability is shown.[11] Therefore, the Court need only determine whether Canal has a duty to defend Sherman in the underlying action.

 West Virginia law imposes a duty to defend when "the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Id.* The parameters of a "reasonably susceptible" interpretation of coverage include the following general principles:

> First, if part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it may eventually be required to pay only some of the claims. Second, an insured's right to a defense will not be foreclosed unless such a result is inescapably necessary. [ ][T]hird, a liability insurer need not defend a case

against the insured if the alleged conduct is entirely foreign to the risk insured against.

*Leeber,* 376 S.E.2d at 584 (agreeing with the Fourth Circuit's interpretation of the duty to defend in *Donnelly v. Transp. Ins. Co.,* 589 F.2d 761, 765 (4th Cir.1978)). Therefore, the test is whether all or part of the claims are reasonably susceptible of an interpretation that coverage exists, unless foreclosure of the defense is inescapably necessary or the claims are totally different from the risks insured against in the policy.

 Sherman argues that Canal must fulfill its duty to defend Sherman under the insurance policy because at least some, if not all, of the claims in the underlying action may invoke coverage. The underlying complaint alleges both negligence on the part of Sherman (Count I) and includes a claim for punitive damages against Sherman (Count IV).[12] According to Sherman, both claims trigger coverage because the employee exclusion does not apply and the policy is silent as to punitive damages. In response, Canal argues that the employee exclusion relieves Canal of the duty to defend as to Count I. Canal also argues that punitive damages are not covered because they result from an intentional act for which coverage is not afforded as a matter of West Virginia law in an accidental-occurrence policy.

Here, Count I—alleging negligence—of the complaint in the underlying wrongful death action is reasonably susceptible of an interpretation of coverage. The claim in the underlying wrongful death action is

---

**11.** This is essentially a ripeness argument, where the duty to indemnify does not arise until the insured is found liable. "A dispute is not yet ripe for judicial determination 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Wyatt, Virgin Islands, Inc. v.*

*Virgin Islands,* 385 F.3d 801, 806 (3d Cir. 2004) (quoting *Doe v. County of Centre, Penn.,* 242 F.3d 437, 453 (3d Cir.2001)).

**12.** Counts II and III are against defendants Alexander Leiva and Third Generation Trucking, respectively.

one of injury as the result of an automobile accident, and the policy at issue is an automobile liability insurance policy. Moreover, as discussed above, the only relevant exclusions do not operate to bar coverage. Therefore, Sherman's motion for summary judgment that Canal has a duty to defend Sherman in the underlying wrongful death action will be granted.

## IV. CONCLUSION

Canal's motion for summary judgment based upon the exclusions in the policy will be denied. Canal has failed to demonstrate the absence of a genuine issue of material fact necessary to the operation of any exclusion, namely that Sherman demonstrated through words or conduct that he understood the exclusions in the policy. *Nat'l Mut. Ins.*, 356 S.E.2d at 496; *see also Luikart*, 216 W.Va. at 753, 613 S.E.2d 896.

Sherman's motion for summary judgment will be granted in part because the exclusions in the policy do not apply to bar coverage of the underlying action as a matter of law. Sherman demonstrated the absence of a genuine issue of material fact that Canal failed to explain the exclusions in the policy. Moreover, Count I of the complaint in the underlying wrongful death action is reasonably susceptible of an interpretation of coverage to trigger the duty to defend. *Aetna*, 342 S.E.2d at 160. Sherman's motion will be denied as to the duty to indemnify, which does not arise until liability is found in the underlying wrongful death action. *Leeber*, 376 S.E.2d at 584.

Taylor's motion for summary judgment will be granted in part because the exclusions in the policy do not apply to bar coverage of the underlying action. As for Taylor's arguments regarding the applicability of underinsured motorist coverage, her motion for summary judgment will be denied as moot in part due to stipulation of the parties. *See* Doc. No. 50.

An appropriate order follows.

### ORDER

**AND NOW,** this 5th day of **May 2006**, it is hereby **ORDERED** that:

1. Plaintiff Canal Insurance Company's Motion for Summary Judgment (doc. no. 29) is **DENIED;**

2. Defendant Woodrow Sherman's Motion for Summary Judgment (doc. no. 32) is **GRANTED IN PART** and **DENIED IN PART** as follows:

 a. the motion is **granted** to the extent that (i) the exclusions do not operate to bar coverage; and (ii) Canal has a duty to defend Sherman in the underlying wrongful death action;

 b. the motion is **denied** to the extent that Canal has a duty to indemnify Sherman in the underlying wrongful death action.

3. Defendant Janet L. Taylor's Motion for Summary Judgment (doc. no. 41) is **GRANTED IN PART** and **DENIED AS MOOT IN PART** as follows:

 a. the motion is **granted** to the extent that the exclusions do not operate to bar coverage in the underlying wrongful death action; and

 b. the motion is **denied as moot** concerning the applicability of underinsured motorist coverage by stipulation of the parties.

**AND IT IS SO ORDERED.**