# 2007 DTA 84

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE GUAYAMA**
**PANEL XII**

ISMAEL ÁLAMO ALVARADO, ETC.
Peticionarios

v.

LAGO CONSTRUCTION, INC., *ET ALS*
Recurridos

Núm. KLCE-07-00675

San Juan, Puerto Rico, a 25 de junio de 2007

Panel integrado por su Presidente, el Juez Ortiz Carrión,
el Juez Brau Ramírez y la Juez Fraticelli Torres

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

### I

El peticionario Ismael Álamo Alvarado reside en Salinas. Para enero de 2004, el peticionario trabajaba como carpintero para la recurrida Lago Construction, Inc., (*"Lago Construction"*), una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico que se dedica a la industria de la construcción.

Para esa fecha, la compañía recurrida Seguros Triple-S, Inc. (*"Triple-S"*) tenía vigente una póliza de responsabilidad pública comercial (*"Commercial General Liability"*) a favor de Lago Construction, póliza núm. CPP-0068033-3/000. La póliza incluia una cubierta por daño físico (Cubierta A), que estaba sujeta a varias cláusulas de exclusión.

Entre éstas, se excluIa de cubierta cualquier daño físico o incapacidad sufrida por un empleado en el curso del trabajo o cualquier obligación de Lago Construction bajo cualquier ley de compensaciones a empleados o de beneficios por incapacidad. Las cláusulas pertinentes leían:

*"2. Exclusions*

*The insurance does not apply to:*

*...*

*d. Workers Compensation and Similar Laws*

*Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.*

*e. Employer's Liability*

*"Bodily Injury" to:*

*1. An "employee" of the insured arising out of and in the course of:*

*a. Employment by the insured; or*

*b. Performing duties related to the conduct of the insured's business.*

*2. The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.*

..." .

Además de la cubierta por daños físicos, la póliza también contenía una cubierta para los gastos médicos que surgieran como consecuencia de los primeros (Cubierta C). Consistente con la cláusula de exclusión mencionada, esta cubierta excluia pagos a cualquier persona, como consecuencia de gastos asociados a daños cubiertos por alguna ley de compensaciones a empleados o de beneficios por incapacidad.

No obstante las exclusiones anteriores, la póliza incluia un endoso "*Stop Gap*" a favor de Lago Construction mediante el cual Triple-S ofrecía cubierta para los daños físicos o enfermedades que sufrieran los empleados de Lago Construction en el curso de su empleo. Este endoso tenía un límite de $1,000,000 por cada accidente e igual suma por cada empleado y estaba sujeto a varias condiciones, entre ellas: (1) Lago Construction debía mantener una póliza a favor de sus empleados bajo la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. secs. 1 y ss., (2) que el daño o lesión no fuese compensable bajo la Ley.

El endoso disponía:

"*Locations:*

*All workplaces of the insured at or from which operations covered by the policy are conducted: It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability also applies to damages because of bodily injury or disease, including death at any time resulting therefrom sustained by any employee of the name insured in the course of his employment, subject to the following provisions:*

*I. The insurance applies:*

***a. If the insured complies and maintains compliance with the provisions of the Workmen's Accident Compensation Act of Puerto Rico and insures his workmen or employees in the State Insurance Fund.***

***b. If such injury, disease or death is sustained by such employee but he is not entitled to receive benefits by such law.***

*II. Exclusions:*

*This insurance does not apply:*

*...*

*e. To any obligation for which the insured or any carrier as his insurer may be held liable under the workmen's compensation or occupational disease law, any unemployment compensation or disability benefits law or under any similar law.*" (Subrayado nuestro)

El 15 de enero de 2004, el peticionario sufrió un accidente de trabajo mientras trabajaba en un proyecto de construcción de Lago Construction en Cayey. Al momento del accidente, el peticionario se encontraba junto a otro empleado, el Sr. Edgardo Escalante, sacando unos moldes pesados de acero del encintado, según les había ordenado su supervisor Carlos Rivera. Mientras retiraban los moldes, al Sr. Escalante se le resbaló uno de éstos, que cayó sobre el cuerpo del peticionario y le ocasionó serias lesiones.

Como consecuencia del accidente, el peticionario sufrió daños en la región lumbo sacral, en su pierna derecha, en ambas manos y en la región cervical. El peticionario acudió a las oficinas de la Corporación del

Fondo del Seguro del Estado en Guayama y luego a la de Ponce. Se ordenó su hospitalización en el Hospital Industrial de San Juan, donde el peticionario recibió tratamiento. Oportunamente fue dado de alta.

Posteriormente, el Fondo determinó que Lago Construction era un patrono no asegurado.

El 9 de febrero de 2005, el peticionario, su esposa Milagros Rivera Colón y la sociedad legal de gananciales compuesta por ambos instaron la presente demanda por daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de Guayama, contra Lago Construction y su compañía aseguradora, esta última designada mediante un nombre ficticio. En su demanda, la parte peticionaria alegó que, como patrono no asegurado, Lago Construction le respondía por los daños sufridos.

Lago Construction contestó la demanda y negó las alegaciones. Admitió que era un patrono no asegurado, pero negó su responsabilidad por el accidente.

Lago Construction notificó a Triple-S sobre la demanda del peticionario. Triple-S negó cubierta y señaló que, bajo el endoso *"Stop Gap"*, la cubierta a favor del peticionario estaba sujeta a que *"Lago Construction haya cumplido y mantenido vigente una póliza con [el Fondo]"*.

Luego de otros trámites, las partes iniciaron la etapa de descubrimiento de prueba. El peticionario notificó a Lago Construction un interrogatorio, en el cual, entre otros requerimientos, le solicitó a la compañía que informara el nombre y dirección de la compañía aseguradora con cubierta sobre los hechos y daños alegados en la demanda. Lago Construction contestó el interrogatorio. Respecto a la información requerida sobre la compañía aseguradora inicialmente respondió *"N/A"*.

Pendiente el proceso de descubrimiento de prueba, el Fondo compareció ante el Tribunal y presentó solicitud de intervención en la que reclamó a Lago Construction el pago de $5,912.42 por concepto de gastos médicos incurridos en el tratamiento del peticionario.

Luego de otros trámites, el 5 de junio de 2006, el peticionario solicitó que se le permitiera enmendar la demanda para incluir a Triple-S como parte codemandada en el litigio. El Tribunal autorizó la enmienda. Triple-S fue personalmente emplazada el 14 de julio de 2006. En el diligenciamiento del emplazamiento, el emplazador omitió indicar qué funcionario había recibido los documentos.

Triple-S presentó una moción de desestimación. Alegó que su emplazamiento había sido tardío porque había sido emplazada fuera del término de seis meses establecido por la Regla 4.3(b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.3 (b), el cual, según Triple-S, debía ser computado desde la presentación inicial de la demanda en febrero de 2005, ya que la demanda había incluido bajo nombre ficticio a la compañía aseguradora de Lago Construction. Triple-S también alegó que su póliza no ofrecía cubierta sobre el accidente porque Lago Construction era un patrono no asegurado, contrario a lo que requería el lenguaje expreso del endoso *"Stop Gap"* suscrito por las partes.

El peticionario se opuso a la moción de desestimación de Triple-S.

El 15 de marzo de 2007, mediante la sentencia parcial recurrida, el Tribunal de Primera Instancia acogió la moción presentada por Triple-S y desestimó la demanda en cuanto a esta parte.

En su sentencia, el Tribunal determinó que Triple-S había sido emplazada tardíamente por el peticionario. El Tribunal también determinó que, conforme al lenguaje expreso del endoso *"Stop-Gap"*, la póliza de Triple-S no cubría los daños del peticionario.

El Tribunal expresó:

*"Coincidimos con [Triple-S] en cuanto a que para que la póliza cubra: (1) el asegurado tiene que cumplir con las disposiciones de la Ley del Fondo del Seguro del Estado, asegurando sus empleados en la Corporación del Fondo del Seguro del Estado; y (2) la lesión, enfermedad o muerte del empleado no puede estar cubierta por los beneficios de la Ley de Compensación al Paciente, ya que lo que cubre es, específicamente, lo no cubierto. En otras palabras, el patrono tiene que ser patrono asegurado, tener al empleado asegurado, y la cubierta aplica a aquella parte que no cubra la póliza del Fondo."*

El Tribunal desestimó la demanda en cuanto a Triple-S. La sentencia parcial emitida por el Tribunal de Primera Instancia no cumplió con los requisitos establecidos por la Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.5, por lo que este dictamen se considera una resolución interlocutoria. *Ramos y otros v. Colón y otros,* 153 D.P.R. 534, 543-544 (2001); *Cárdenas Maxán v. Rodríguez,* 119 D.P.R. 642, 659 (1987); *Asociación de Propietarios v. Santa Bárbara Co.,* 112 D.P.R. 33, 40 (1982).

Inconforme con la determinación del foro de instancia, el peticionario acudió ante este Tribunal mediante el presente recurso de *certiorari.*

Mediante resolución emitida el 21 de mayo de 2007, acogimos el recurso y concedimos término a la recurrida Triple-S para comparecer.

Confirmamos.

## II

En su recurso, la parte peticionaria plantea que el Tribunal de Primera Instancia erró al desestimar su demanda contra Triple-S.

No estamos persuadidos que el Tribunal de Primera Instancia haya actuado correctamente al desestimar la demanda por el fundamento de que los peticionarios diligenciaron el emplazamiento fuera del término de seis meses establecido por la Regla 4.3(b) de las de Procedimiento Civil. Lo cierto es que los peticionarios enmendaron su demanda en junio de 2006. Triple-S fue emplazada el 14 de julio de 2006, apenas un mes después.

Triple-S alega que, como la demanda original presentada en febrero de 2005 por la parte peticionaria se designaba como parte demandada, bajo nombre ficticio, a la compañía aseguradora de Lago Construction, el término de seis meses para su emplazamiento debe ser computado a partir de entonces, lo que significa que los peticionarios incumplieron el término establecido por la Regla 4.3(b).

Lo cierto es que, al momento de la presentación de la demanda, los peticionarios no conocían a ciencia cierta si Lago Construction tenía una compañía aseguradora ni sabían su identidad, de modo que no estaban en posición de diligenciar el emplazamiento. El récord refleja que inicialmente, cuando los peticionarios inquirieron cuál era la compañía aseguradora de Lago Construction, esta parte no identificó a Triple-S, ya que ésta había denegado cubierta sobre el accidente. Consideramos, en estas circunstancias, que el término para emplazar debe computarse a partir de la enmienda para designar a Triple-S por su nombre verdadero. Compárense, *Núñez González v. Jiménez Miranda,* 122 D.P.R. 134, 140-141 (1988); *Ortiz v. Gobierno Municipal de Ponce,* 94 D.P.R. 472, 478 (1967); *Fuentes v. Tribl. de Distrito,* 73 D.P.R. 959, 986-987 (1952).

La omisión del emplazador de los peticionarios de indicar en el diligenciamiento la identidad del funcionario de Triple-S que recibió el emplazamiento también constituye un defecto subsanable bajo la Regla 4.9 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.9. Según se conoce, es el hecho de la citación, y no

la certificación que de ella se hace, lo que confiere jurisdicción a un tribunal sobre una parte. *Philip Morris, Inc. v. Tribunal Superior,* 103 D.P.R. 207, 212 (1975).

En cualquier caso, no cabe duda que Triple-S se sometió a la jurisdicción del Tribunal de Primera Instancia, por cuanto compareció ante ese foro y presentó un argumento basado en la inexistencia de una causa de acción en su contra, esto es, un argumento asociado con los méritos de la reclamación. Compárense, *Peña v. Warren,* 162 D.P.R. ___ (2004), **2004 J.T.S. 141,** a la pág. 130; *Vázquez v. López,* 160 D.P.R. ___ (2003), **2003 J.T.S. 174,** a la pág. 442; *Álvarez v. Arias,* 156 D.P.R. 352, 373 (2002); *Qume Caribe, Inc. v. Srio. de Hacienda,* 153 D.P.R. 700, 711 (2001); *López v. J. Gus Lallande,* 144 D.P.R. 774, 794 (1998); *Mercado v. Panther's Military Soc., Inc.,* 125 D.P.R. 98, 104 (1990); *Claudio v. Casillas Mojica,* 100 D.P.R. 761, 772-773 (1972); *Franco v. Corte,* 71 D.P.R. 686, 689 (1950).

El Tribunal de Primera Instancia, según hemos visto, también desestimó la reclamación porque entendió que el accidente resultaba excluido de la póliza, conforme a los términos expresos del endoso *"Stop Gap"* suscrito por las partes.

La norma es que las compañías aseguradoras tienen la facultad de adoptar cláusulas de exclusión de responsabilidad. *Domínguez v. GA Life,* 157 D.P.R. 690, 700-701 (2002); *Pagán Caraballo v. Silva, Ortiz,* 122 D.P.R. 105, 110-111 (1988).

Este tipo de cláusulas debe ser interpretado restrictivamente. *Molina v. Plaza Acuática,* 166 D.P.R. ___ (2005), **2005 J.T.S. 177,** a la pág. 489; *Domínguez v. GA Life,* 157 D.P.R. a las págs. 700-701; *Quiñones López v. Manzano Pozas,* 141 D.P.R. 139, 155-156 (1996); *Pagán Caraballo v. Silva, Ortiz,* 122 D.P.R. a las págs. 110-111.

Por constituir generalmente contratos de adhesión, las cláusulas de los contratos de seguros deben ser interpretadas de la manera más favorable al asegurado, en caso de oscuridad o ambigüedad de su lenguaje. *Coop. Ahorro y Créd. Oriental v. S.L.G.,* 158 D.P.R. 714, 723 (2003); *López v. Atlantic Southern Ins. Co.,* 158 D.P.R. 562, 568 (2003); *Domínguez v. GA Life,* 157 D.P.R. a la pág. 700; *PFZ Props. Inc., v. Gen. Acc. Ins. Co.,* 136 D.P.R. 881, 902 (1994); *Rivera v. Insurance Co. of P.R.,* 103 D.P.R. 91, 93 (1974); *Barreras v. Santana,* 87 D.P.R. 227, 231 (1963).

No obstante, si el lenguaje de una cláusula es claro, los tribunales vienen obligados a darle validez. *Molina v. Plaza Acuática,* **2005 J.T.S.** ___, a la pág. 489; *Coop. Ahorro y Créd. Oriental v. S.L.G.,* 158 D.P.R. a la pág. 724; *López v. Atlantic Southern Ins. Co.,* 158 D.P.R. a la pág. 569; *Domínguez v. GA Life,* 157 D.P.R. a la pág. 701; *Díaz Ayala et al. v. E.L.A.,* 153 D.P.R. 675, 691 (2001); *Marín v. American Int'l Ins. Co. of P.R.,* 137 D.P.R. 356, 362-363 (1994); *González v. Coop. Seguros de Vida de P.R.,* 117 D.P.R. 659, 662 (1986); *Casanova v. P.R.-Amer. Ins. Co.,* 106 D.P.R. 689, 696-697 (1978); *Ferrer v. Lebrón García,* 103 D.P.R. 600, 603 (1975); *Rivera v. Insurance Co. of P.R.,* 103 D.P.R. a las págs. 93-94; cf, 31 L.P.R.A. sec. 3471.

En el caso de autos, al momento del accidente del peticionario existía una póliza de responsabilidad pública comercial a favor de Lago Construction expedida por la recurrida Triple-S. Esta póliza, según hemos mencionado, excluia expresamente los daños por lesiones físicas sufridas por los empleados en el curso del empleo, así como cualquier obligación de Lago Construction bajo la legislación de compensaciones por accidentes de trabajo.

El peticionario sostiene que el endoso o *"Stop Gap"* añadido a la póliza sí cubre los daños sufridos por él.

Esta clase de endoso constituye un seguro de responsabilidad patronal a favor de los empleados para situaciones de accidentes de trabajo. En jurisdicciones como Puerto Rico, los seguros de este tipo generalmente

han sido desplazados por la legislación sobre compensaciones por accidentes del trabajo.

Los endosos "*stop gaps*" o "*fill the gaps*" tienen la finalidad de suplementar la protección provista a los empleados por los sistemas de compensación por accidentes del trabajo y de proveerles cubierta para aquellas lesiones no cubiertas por esos sistemas. El endoso, de esta forma, llena los vacíos de la legislación. De ahí, su nombre "*stop gap*". Véanse, Lee R. Russ & Thomas F. Segalla, *Couch on Insurance,* 3ra edición, Tomo 16, West Group, 2000, a las págs. 225-134; 11 L.P.R.A. secs. 1 y ss.; *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.,* 884 P.2d 1048, 1052-1053 (Cal. 1994); *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 718 P.2d 920, 927 (Cal. 1986); véanse, además, *USX Corp. v. Liberty Mut. Ins. Co.,* 444 F.3d 192, 199 (3rd Cir. 2006); *Luikart v. Valley Brook Concrete & Supply, Inc.,* 613 S.E.2d 896, 902 (W. Va. 2005); *Schmidt v. Smith and Personalized Audio Visual, Inc.,* 713 A.2d 1014, 1017 (N.J. 1998).

El profesor Appleman explica:

"*Employers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a "gap-filler", providing protection to the employer in those situations where the employee has a right to bring a tort action, despite the provisions of the workers' compensation statute, or where the employee is not subject to the workers' compensation law. Generally, these two kinds of coverage are mutually exclusive. Employers' liability insurance ... provides coverage only to injured employees not covered by workers' compensation.*"

John Alan Appleman, *Insurance Law and Practice,* Vol. 7B, West Publishing Co., 1979, Cumulative Supplement, a la pág. 1; véanse, además, *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.,* 884 P.2d, a las págs. 1052-1053; *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 718 P.2d a la pág. 927.

El endoso puede adquirirse como una cubierta separada o como parte de una póliza de responsabilidad pública comercial. *Couch on Insurance,* a las págs. 225-135.

Dada su naturaleza subsidiaria, es natural que este tipo de endoso exija como condición para la cubierta que el patrono mantenga a los empleados asegurados bajo el sistema de compensación por accidentes del trabajo.

En el caso de autos, el endoso "*Stop Gap*" suscrito entre las partes expresamente disponía que:

"*The insurance applies:*

*a. If the insured complies and maintains compliance with the provisions of the Workmen's Accident Compensation Act of Puerto Rico and insures his workmen or employees in the State Insurance Fund.*

*b. If such injury, disease or death is sustained by such employee but he is not entitled to receive benefits by such law.*"

Conforme al lenguaje anterior, la aplicabilidad del endoso o "*Stop Gap*" estaba sujeta a que Lago Construction cumpliera con las disposiciones de la Ley del Sistema de Compensaciones por Accidentes del Trabajo de Puerto Rico y asegurara a sus trabajadores o empleados en el Fondo. Al haber omitido cumplir con esta condición, la póliza resulta inaplicable.

Las condiciones establecidas en la cláusula eran claras en este sentido y no presentaban ambigüedad. *Coop. Ahorro y Créd. Oriental v. S.L.G.,* 158 D.P.R. a la pág. 724; *López v. Atlantic Southern Ins. Co.,* 158 D.P.R. a la pág. 569; *Díaz Ayala et al. v. E.L.A.,* 153 D.P.R. a la pág. 691; *González v. Coop. Seguros de Vida de P.R.,* 117 D.P.R. a la pág. 662.

En su recurso, el peticionario alega que él tenía derecho a recobrar porque, como Lago Construction omitió mantenerlo asegurado con el Fondo, el peticionario no tiene derecho a recibir los beneficios de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, lo que lo coloca dentro del palio de la segunda de las condiciones citadas de la cláusula.

Las cláusulas del endoso deben ser interpretadas de manera global, a base del conjunto de sus términos, y no de manera aislada. 26 L.P.R.A. sec. 1125; *Molina v. Plaza Acuática,* **2005 J.T.S. 177**, a la pág. 489; *Coop. Ahorro y Créd. Oriental v. S.L.G.,* 158 D.P.R. a la pág. 723; *López v. Atlantic Southern Ins. Co.,* 158 D.P.R. a la pág. 568; *Domínguez v. GA Life,* 157 D.P.R. a la pág. 699; *Díaz Ayala et al. v. E.L.A.,* 153 D.P.R. a la pág. 691; *Quiñones López v. Manzano Pozas,* 141 D.P.R. a la pág. 154.

La interpretación sugerida por el peticionario transformaría el carácter subsidiario de la póliza, ya que Triple-S estaría asumiendo todo tipo de riesgo enfrentado por los trabajadores en el ambiente de empleo y no solamente aquellos no cubiertos por el Fondo. No debemos extender de manera tan irrazonable una cubierta diseñada precisamente para tener el alcance limitado de llenar los vacíos de la Ley del Sistema de Compensaciones por Accidentes del Trabajo.

Otros tribunales han interpretado que este tipo de cláusula, de ordinario, no cubre acciones por daños y perjuicios como la instada por los peticionarios en el caso de autos. Véase, e.g., *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.,* 884 P.2d a la pág. 1056 (*"the policy's language is susceptible of no other objective construction than providing coverage solely for workers' compensation benefits, or claims, proceedings, or suits for such benefits, and not for civil suits for damages"*); véanse, además, *Stephenson v. Argonaut Ins. Co.,* 125 Cal. App. 4th 962, 968 (Cal. App. 4th Dist. 2004); *Culligan v. State Compensation Ins. Fund,* 81 Cal App. 4th 429, 436 (Cal App. 1st Dist. 2000).

En su recurso, el peticionario invoca lo resuelto en *Erie Ins. Property and Cas. Co. v. Stage Show Pizza, JTS, Inc.,* 553 S.E. 2d 257 (W. Va. 2001), donde el Tribunal permitió la presentación de una causa de acción por daños y perjuicios contra la compañía aseguradora de un patrono no asegurado bajo el sistema estatal de compensaciones por accidentes del trabajo. Entendemos que este precedente es distinguible, ya que allí, a diferencia del caso de autos, la póliza no requería al patrono mantener a sus empleados asegurados ante el sistema estatal de compensaciones por accidentes del trabajo y la compañía aseguradora; más aún, se comprometió a pagar por cualesquiera daños que fuesen imputables por ley al asegurado. 553 S.E. 2d a la pág. 260. █

En el caso de autos, por el contrario, el endoso emitido por Triple-S a favor de Lago Construction estaba sujeto a la condición expresa de que el asegurado cumpliera con la Ley del Sistema de Compensaciones por Accidentes del Trabajo y mantuviera a sus empleados asegurados con el Fondo, lo que Lago Construction no hizo.

La responsabilidad de Triple-S está limitada por los términos de la póliza. *Gen. Accid. Ins. Co. P.R. v. Ramos,* 148 D.P.R. 523, 531 (1999); 26 L.P.R.A. sec. 2003.

En estas circunstancias, el Tribunal de Primera Instancia actuó correctamente al desestimar la acción en cuanto a esta parte.

Por los fundamentos expresados, se expide el auto solicitado y se confirma la sentencia parcial recurrida.

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.